**STATE of Missouri, Respondent,**

v.

**Gerald Lee MILLER, Appellant.**

**No. 56979.**

Supreme Court of Missouri,
Division No. 1.

Feb. 12, 1973.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

Gerald M. Handley, Crim. Law Intern, The Legal Aid and Defender Society of Greater Kansas City, Kansas City, for appellant; Paul T. Miller, Executive Director, Willard B. Bunch, Chief Defender, Kansas City, of counsel.

LAURANCE M. HYDE, Special Commissioner.

Defendant was convicted of robbery in the first degree, a felony, and sentenced to imprisonment for ten years. The notice of appeal was filed June 2, 1971 so we have jurisdiction of this appeal. We affirm.

The Pony Express Service Station on Highway 170, near the north limits of Chillicothe, was robbed by three white males on November 5, 1970. The men drove up about 6:30 P.M. in a light green Chevrolet. It had part of some kind of a decal sticker on the front door. Two of the men got out of the car and entered the station, one wearing sunglasses had a shotgun. Ronald Herring was alone in the station and being threatened opened the cash drawer and handed money from it, as designated by the man with the shotgun, to the other man with him. Another man, identified at the trial by Herring as defendant, then came in, threw him to the floor with "a sort of judo throw," and took more money from the cash drawer. He

said defendant "wanted to cold cop me to put me out so I wouldn't call the police." He said he told them: "I won't look" and covered up his head. However, he saw them get in the car and leave. After they left he found a 7-Up pop bottle in the driveway "which wasn't on the driveway when they pulled in." There were no other cars at the station after the men left before he found the bottle and were none when they arrived or immediately before their arrival.

Herring called the city police, the Highway Patrol and the station manager, who had gone home about 6:00 P.M. The 7-Up bottle when examined at the Highway Patrol Laboratory was found to have a fingerprint of defendant on it. The chain of custody of the bottle to the laboratory by the officers was established and is not challenged.

Defendant's brief raises the issue of Herring's in-court identification of him as being based on confrontation the day after the robbery claimed to have been so "irreparably suggestive, unfair, untimely and absent of propriety as to deprive [him] of due process of law." Defendant relies on Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L. Ed.2d 1199 (1967) and cases following them. However, no pretrial hearing on this issue was requested or held. Furthermore, no objection was made to Herring's in-court identification at the trial and it was not mentioned in defendant's motion for new trial. See Criminal Rule 27.20, V.A.M.R.; State v. Franklin, Mo.Sup., 448 S.W.2d 583 (1970); State v. Brownridge, Mo.Sup., 459 S.W.2d 317 (1970). Moreover, the confrontation identification of defendant by Herring was first brought out on cross-examination of Herring by defendant's counsel. Under such circumstances we held in State v. Franklin, supra, 448 S.W.2d 1.c. 584, even the plain error provision, Criminal Rule 27.20(c) was not applicable. Therefore, no issue of in-court identification has been preserved for appellate review. A further reason for not considering this issue under Rule 27.20(c) is that in Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411, it was held the Wade-Gilbert exclusionary rule was not applicable to testimony concerning an identification that took place before the commencement of any prosecution as was the situation in this case.

The State's evidence was that next day after the holdup Sgt. Patchen of the Highway Patrol began a search in Livingston and Daviess Counties for the men and car described by Herring. That afternoon he was in Jamesport, about 20 miles north of Chillicothe on Highway 170. While at the home of the Jamesport constable he saw defendant and his brother drive up in a light green Chevrolet. (They were bringing their father to a barber.) Sergeant Patchen asked them to get out of the car, advised them of their rights and told them he would detain them, keeping them in the constable's yard. He called the sheriff at Chillicothe to bring Herring to see the men. When they arrived, he had Herring first view the men from the car, then get out and view the men and the car. He told Herring not to be frightened and to be certain. He said Herring identified the men and the car. Herring had told the officers after the robbery that he thought the car was a 1951 or 1952 Chevrolet. The car found was a 1953 Chevrolet but it was shown the principal difference between these models was in the front and it is difficult to see that from the side. There were remains of a sticker on both front doors of the car found there. On cross-examination, Herring said the car had been washed and he realized there it was a 1953 model but he saw the patch of the sticker on the side and identified it as the car. He said at first: "I was more scared of him than I was during the holdup." However, under vigorous cross-examination, he denied that he had expressed doubt there as to identity of defendant and said "I'd know him anywhere," and that he was

sure that day. A pair of sunglasses, like the man with the shotgun had at the robbery, was found in the car at that time.

Defendant had testimony that his brother and the man who was charged with them were at the farm home of their father and mother near Jamesport during the time of the robbery from 6:00 P.M. until after 7:00 P.M. They were at a night club at Trenton after that time arriving there between 7:00 and 8:00 P.M. Trenton is 17 miles from Jamesport.

■ In this case there was the corroborating evidence of defendant's fingerprint on the 7-Up bottle found in the driveway of the filling station about eight feet in front of the door. Defendant argues the evidence of his fingerprint should not have been admitted because it was not shown that it could only have been left at the time of the commission of the crime, citing 28 A.L.R.2d 1150–1155, 3 Wharton's Criminal Evidence 12th Ed. § 982. Defendant confuses admissibility with sufficiency. Section 28 of 28 A.L.R.2d annotation, p. 1150, which he cites deals with sufficiency of fingerprint evidence to sustain a conviction. Section 29 of this annotation, p. 1154, cites cases in which fingerprints have been held sufficient to warrant a conviction. The Florida cases cited by defendant, Tirko v. State, Fla.App., 138 So.2d 388 (1962), and Ivey v. State, Fla.App., 176 So.2d 611 (1965), involved breaking and entering with intent to commit larceny. Tirko held the fingerprint evidence sufficient to establish identity of defendant because it was shown the print could have been made at the time the crime was committed. Ivey held the print insufficient because the circumstances did not show the print could have been made only at the time the crime was committed. In this case, the testimony of Herring was that the bottle was not on the station driveway before the holdup car arrived and that it was there when it left. Defendant claimed

to have been in the station many times before the day of the holdup and that he and other members of his family had purchased pop there on other occasions. Herring testified he had never seen defendant there. It was shown that it was possible for a fingerprint to remain on a glass surface for several weeks. It was also shown that pop was sold at the station and that there were usually five or six cases of empty bottles at the station. Defendant also cites Graves v. State, 119 Tex.Cr.R. 68, 43 S. W.2d 953 (1931), where a conviction of burglary was reversed because fingerprints of defendant were not on the safe from which money was taken but on a filing cabinet where they could have been made during plaintiff's employment ending ten days before the burglary. See also State v. Minton, 228 N.C. 518, 46 S.E.2d 296 (1948), where defendant, whose fingerprints were on a shop door, had been there during business hours as a customer. However, in Grice v. State, 142 Tex.Cr.R. 4, 151 S.W.2d 211 (1941), fingerprints on a door were held sufficient to support a conviction of burglary. The only other evidence in that case was that he had been seen on the streets of the city during a late hour of the night but not then at or about the building burglarized. In this case, defendant was positively identified by Herring as taking part in the robbery and the fingerprint evidence only supports his testimony that defendant was one of the robbers. Furthermore, his testimony was sufficient to support a finding that the bottle was left there during the robbery.

The judgment of conviction is affirmed.

PER CURIAM:

The foregoing opinion by LAURANCE M. HYDE, Special Commissioner, is adopted as the opinion of the court.

All of the Judges concur.