STATE of Missouri, Plaintiff-Respondent,

v.

Charles McNEAL, Defendant-Appellant.

No. 36711.

Missouri Court of Appeals,
St. Louis District,
Division Two.

July 13, 1976.

Charles D. Kitchin, Public Defender, James C. Jones, Henry Riecke, Asst. Public Defenders, St. Louis, for defendant-appellant.

Preston Dean, Asst. Atty. Gen., Jefferson City, Brendan Ryan, Circuit Atty., St. Louis, for plaintiff-respondent.

KELLY, Judge.

Charles McNeal, appellant, was convicted of feloniously selling a Schedule I Controlled Substance—Heroin—in violation of § 195.020 RSMo. 1969 and sentenced to imprisonment in the custody of the Missouri Department of Corrections. § 195.200(4) RSMo. 1969. He appeals contending that his conviction should be reversed and he should be discharged or, in the alternative, his conviction should be reversed and the cause remanded for a new trial. We affirm the judgment of the trial court.

On appeal Mr. McNeal alleges that the trial court was guilty of error in: 1) permitting the substitution of an information wherein the date of the offense charged was changed from December 1, 1973, as pleaded in the indictment originally filed in the Circuit Court of the City of St. Louis, to December 2, 1973, and thereby "prejudiced substantial rights of the defendant." 2) in overruling his motion for judgment of acquittal at the close of all of the evidence because the evidence was insufficient to prove that he was involved in the sale of heroin on December 2, 1973, beyond a reasonable doubt; and 3) in denying his motion for mistrial when the prosecutor introduced testimony that the police officer, Richard C. Hemphill, attempted to purchase heroin from him in November of 1973, and in permitting, over his objections, evidence of unrelated crimes.

With respect to appellant's first point, this proceeding was instituted by the filing of an indictment in the office of the Clerk of the Court for Criminal Causes of the City of St. Louis charging that the offense was committed on December 1, 1973. On November 18, 1974, by leave of court, a Substitute Information in Lieu of Indictment was filed charging appellant with the Illegal Sale of a Schedule I Controlled Substance— Heroin—on December 2, 1973 and on November 20, 1974, the cause came on for trial on this Substitute Information. Prior to the commencement of the trial a conference was held in the chambers of the trial court at which time the Assistant Circuit Attorney outlined what had occurred with refer-

ence to the endorsement of two additional witnesses after the filing of the original indictment and the filing of the Substitute Information in Lieu of Indictment aforesaid. He stated to the trial court that he noticed that day that the State had not endorsed those two witnesses on the "new information" and he was therefore filing "another memorandum with the Court, endorsing" those two witnesses—Robert Roither and Thomas Marren, from the St. Louis County Police Department. The trial court inquired of appellant's counsel if he had any objection to those actions outlined by the State's attorney and he replied that he had no objection. The trial court thereupon announced that leave would be granted to add the endorsements, that leave had already been granted to file the substitute information, and inquired if there were any other matters that should be taken up. Appellant's counsel replied that he would like for the record to show that prior to the filing of the substitute information his client maintained that he was normally baby-sitting for his sister's children during the time this alleged crime occurred, but with the change of date as pled in the substitute information his client said he would not have been baby-sitting on that date because his sister would not have been working. However, although the record indicates that the question of alibi might have been discussed on November 18, 1974, when the trial court granted leave to file the substitute information, whatever that discussion constituted is not a part of this record and we would have to speculate as to its contents. Suffice it to be said, however, that other than this statement by defense counsel that the change of date ruled out the alibi appellant might have attempted to establish so long as the date of the offense was allegedly December 1, 1973, no objection to the filing of the substitute information nor to proceeding to trial on it was lodged. No request for a continuance so that he might prepare his defense, nor for any other reason, was voiced at that time.

We have searched the Motion for New Trial filed in this cause for any refer-

ence to this point as a grounds for new trial in the trial court but this point is nowhere to be found therein. It is fundamental that where an appellant fails to make known to the trial court his objection so that he might obtain relief and where he fails to call this alleged error to the attention of the trial court in his motion for new trial, he cannot, with a few exceptions, raise it for the first time on appeal. *State v. Bowens*, 476 S.W.2d 495, 498[5] (Mo.1972), *State v. Henderson*, 510 S.W.2d 813, 821[12] (Mo. App.1974), Rule 27.20(a) V.A.M.R. Where a defendant proceeds to trial on a substitute information without making known his objections prior to trial, he cannot complain of error, if any, in that respect on appeal. *State v. Cook*, 333 S.W.2d 337, 340[7] (Mo. App.1960), *State v. Maxie*, 513 S.W.2d 338, 340[1] (Mo.1974). Furthermore, the appellant utterly fails to show how he was prejudiced by this change in dates. He took the stand in his own defense and denied that he had ever seen Officer Hemphill prior to the day of trial and further testified that on December 2, 1973, he was at home watching a football game because that was his custom to watch football games on Sunday afternoons. He had no independent recollection of this particular Sunday, but it was his habit to spend his Sunday afternoons watching football games. He denied that he had ever been involved in the sale of heroin. At no time has this appellant contended that he was denied any defense to this charge by the change in date. We rule this point against appellant.

■ With respect to appellant's second point—that there was insufficient evidence to support his conviction—we view the evidence in a light most favorable to the jury verdict, taking all of the State's evidence as true and considering the inferences most favorable in support thereof. Viewed in this light, the jury could have found from the State's evidence that on Sunday, December 2, 1973, Richard C. Hemphill, was a Detective employed by the St. Louis County Police Department as an undercover narcotics agent who performed his duties wearing old clothes, long hair and a beard. That sometime in November, 1973, he had struck up an acquaintance with the appellant through an informant, and at approximately 11:45 or 11:50 a. m. on that Sunday morning he came into the City of St. Louis with $150.00 in his possession for the purpose of purchasing some drugs. He also had another party—an informant—with him at the time. He drove his car to the vicinity of Vandeventer and Aldine in the City of St. Louis and parked his automobile there, remaining behind the wheel of his car. Appellant, whom Hemphill identified as "McNeal," came out of a residence near where he was parked and walked onto a vacant filling station parking lot, came over to the car in which Hemphill was seated, and got into the back seat. Hemphill was then introduced to appellant and asked him if he could get some heroin. Appellant replied that he could, and a discussion followed relative to the quality, the color, and "how many times it would be stepped on." [1] Appellant then directed Hemphill and the informant to a residence located near the intersection of Fall and Cottage Avenues, and upon arriving there Hemphill gave appellant the $150.00 to purchase the drugs. Appellant got out of the car, entered the residence, but returned shortly, stated that there was no one at home, and suggested that he might be able to get some heroin at another location. Appellant then directed Hemphill to the intersection of Jefferson and Sullivan Avenues in the City of St. Louis, where Hemphill parked the car on Sullivan Avenue and the appellant exited the car and went into a residence at either 2532 or 2534 Sullivan Avenue. Five or ten minutes later the appellant returned to the car and handed Hemphill a tinfoil packet which, upon examination, was determined to be satisfactory to Hemphill. As part of his compensation for getting the heroin for Hemphill, appellant took a pinch of the heroin in his fingers. Appellant, who up to

1. This term, Detective Hemphill testified, means "cutting" the drug's purity by adding flour or some other "mixer."

this point had been attired in jeans and a jean jacket, re-entered the residence on Sullivan Avenue and returned to the car wearing a leather type jacket. When asked about the leather type jacket, appellant answered that he owed "the guy inside" some money and that he had paid the man and got the jacket back. Hemphill then asked the appellant if there was someplace he could drop him off; appellant told him to drop him off right up the street on Grand Avenue because he had some business to conduct there. Hemphill then drove appellant to Grand Avenue where he let him out of the car.

Hemphill labeled the tinfoil package and its contents and packaged it as evidence, put it in his evidence locker, sealed it, and on Monday morning, December 3, 1973, took it to the St. Louis County police laboratory where he surrendered it to Robert Roither, a chemist, who took custody of the evidence envelope and its contents until later that same day when he delivered it to Thomas Marren, a criminalist employed at the police laboratory.

Thomas Marren testified that he was employed as a criminalist by the St. Louis County Police Department when, on December 3, 1973, he received an evidence envelope from Officer Roither which he placed in an evidence locker until December 20, 1973, when he opened the evidence envelope, examined its contents and found a tinfoil package containing a beige powder. He tested this beige powder with chemicals, instruments and thin-layer chromatography and concluded that it was heroin.

Appellant's argument that the State's evidence is insufficient to prove beyond a reasonable doubt that he was involved in the sale of heroin on December 2, 1973, is based upon what he argues are contradictions in the testimony of the only eyewitness to the alleged sale produced by the State which contradictions, he argues, destroy Hemphill's testimony so that it cannot support a conviction.

Richard C. Hemphill was the only State's witness to testify to the illegal sale of the heroin. On direct examination he testified

that the sale took place on December 2, 1973, and identified the defendant as "McNeal." He pointed him out as the man "Sitting next to the attorney at the table," and as the "Negro male, with the brown short-sleeve shirt."

On cross-examination, appellant's counsel inquired if Hemphill knew appellant's first name, and he replied: "Oscar." It was later developed in evidence that there are two McNeal brothers, "Charles"—the appellant—and "Oscar." Further cross-examination developed that the police report of the offense signed by Hemphill reported the date of the crime as December 1, 1973 and that both the evidence envelope and the evidence seal on the tinfoil packet containing the heroin bore the date "12–1–73."

■ These inconsistencies in Hemphill's testimony were, in some instances at least, explained, and go only to the weight of his evidence. He explained the date on the police report by testifying that he did not type the police report; that report was typed by a juvenile officer secretary who prepared it from a tape cassette made by him. He acknowledged his signature on the police report but insisted that the date of this offense was December 2, 1973, despite what the police report said. With respect to his use of the name "Oscar" in response to defense counsel's inquiry, there was other evidence in the case that Hemphill had met Charles McNeal in November, 1973, and December 2, 1973, was the second occasion on which he had seen the appellant. On each occasion the appellant was in his presence for approximately one hour. This sale, on December 2, 1973, was made in broad daylight.

Defense counsel in cross-examination made use of some testimony given by Hemphill to the Grand Jury on February 12, 1974, wherein Hemphill was asked if sometime subsequent to "both transactions" he met Charles McNeal. His response, as transcribed in his testimony before the Grand Jury, was: "Yes, we called Oscar and wanted to buy some more stuff and he said he was going to go to Illinois and to call his brother and he would call him and

set it up so his brother would take us to get some stuff and this was on a Saturday morning." The witness stated that he did not recall that this was his testimony before the Grand Jury, but he did not deny that it was. However, he persisted in his testimony that the sale took place on December 2, 1973. On re-direct examination, the prosecutor developed from Hemphill that he had bought heroin from both of the McNeal brothers, Charles and Oscar, and had contacts with them five or six times—two or three with Charles—and each one of these contacts lasted for about an hour. He also testified that when he gave testimony before the Grand Jury he was testifying about both Charles and Oscar McNeal and one Anna Jean Mize, a man by the name of Spiegel and a girl by the name of Julia McCabe; five different individuals and eleven drug sales.

■ Eyewitness testimony by a single witness, if believed by the jury beyond a reasonable doubt, is sufficient to support a conviction since the credibility of the witnesses and the weight of the evidence is for the jury. *State v. Tucker*, 451 S.W.2d 91, 95[5] (Mo.1970), *State v. Graham*, 527 S.W.2d 936, 947[15] (Mo.App.1975). Officer Hemphill testified on direct examination that the date of the sale was December 2, 1973, and that "McNeal," whom he pointed out as the man seated next to counsel at the table, was the man who made the sale. The alleged contradictions in Hemphill's testimony came out in cross-examination. Despite the answer that defendant's first name was "Oscar," we conclude that there is sufficient evidence from which the jury could conclude that this was a "slip-of-the-tongue" clarified by other testimony of the witness and his identification of the appellant as the person who made the sale. The difference in the date of the alleged offense as it appeared in the police report and on the seal was in effect an attempt at impeachment by what purports to be prior inconsistent statements of this witness. Impeaching they may have been, but under Missouri law they may not be taken as substantive evidence of the fact that the crime did occur on December 1, 1973. *State*

*v. Granberry*, 491 S.W.2d 528, 531[3] (Mo. banc 1973), *State v. Rippee*, 512 S.W.2d 235, 237[1] (Mo.App.1974). Nor is it clear that the excerpts from the Grand Jury testimony of Officer Hemphill used by defense counsel in his cross-examination, contradicted his testimony at trial. We conclude that the inferences to be drawn from said testimony should be left to the jury.

■ It is not the function of an appellate court to weigh and evaluate the evidence. It is the function of the trial jury to do that and to determine from the evidence the guilt of the defendant in a criminal case beyond a reasonable doubt. *State v. Kramer*, 534 S.W.2d 281, 282[2] (Mo.App.1976). We rule this point against appellant.

Appellant's third, and final point, that the trial court erred in denying his motion for mistrial is likewise without merit. The incident appellant refers to was occasioned by an answer to a question propounded by the prosecutor on direct examination relative to what was the occasion on which Hemphill first saw the appellant in November, 1973. The witness answered: "I attempted to purchase some heroin from him." Counsel for the appellant immediately voiced his objection on the ground that appellant was charged with the sale of heroin on December 2, 1973 and the witness "is talking about something back in November." This objection was sustained. A request was then made that the jury be instructed to disregard the question and answer, and this request was granted and the jury was so instructed. Counsel then requested a mistrial and the trial court denied this request.

■ The granting of a mistrial is a drastic remedy that should be exercised only in extraordinary circumstances where the incident is so grievous that the prejudicial effect of the evidence which came in can be removed in no other way. Not every error which might occur in trial requires the granting of a mistrial. *State v. Nolan*, 423 S.W.2d 815, 818[11,12] (Mo.1968), *State v. Barnes*, 517 S.W.2d 155, 166[16] (Mo. 1974). In fact, this evidence did not tend to

introduce evidence of another crime committed by the appellant, rather it redounded to his benefit because the witness' testimony left the indelible mark that despite the police officer's efforts to make a purchase, his attempt apparently fell on deaf ears of the appellant and was unsuccessful.

Although not specifically set out in this point, other than as alleged error "in permitting, over defendant's objections, evidence of unrelated crime," appellant also argues that the trial court erred in admitting into evidence testimony relative to prior dealings with the appellant, his brother and other associates concerning drug transactions and in permitting the prosecutor to argue to the jury that appellant, his brother, and three associates were involved in the sale of heroin to Hemphill.

Counsel for appellant attacked Detective Hemphill's identification of his client as the man who sold the heroin to him and also attempted to impeach him relative to the date on which the sale took place. On re-direct examination the prosecutor developed from this witness that there were two McNeal brothers, Oscar and Charles, and that he had made contact with both of them and bought heroin from both of them. No objection was made to this line of inquiry. When the witness was asked if he had come in contact with any of their other associates, counsel objected on the ground that it was not appellant's brother or associates who were on trial and that any testimony adduced about others tended to prejudice the jury against his client. This objection was overruled on the ground that "the question is now before the jury, and I think you opened it up a little bit as to the question if there has been a proper identification, . . . ." The witness then testified that he had met a brother-in-law of the appellant whose name he did not recall and a half-dozen associates whose names he did not know.

Further re-direct examination of the detective was directed to the witness' appearance before the Grand Jury on February 12, 1974, and he testified, without objection, that on that occasion he gave testimony about five different defendants and among these were Oscar and Charles McNeal.

On re-cross examination defense counsel again interrogated Detective Hemphill about how many times he had seen appellant, the number of "dealings" he had with Oscar and with Charles, and the fact that he had made two drug purchases from Oscar and one from Charles.

■■■ On re-direct examination a witness may properly be examined on any matters which tend to refute, weaken or remove inferences, impressions, implications, or suggestions which might have resulted from his testimony on cross-examination although the facts brought out may be prejudicial to the defendant. *State v. McKinney*, 475 S.W.2d 51, 54[2] (Mo.1971). While the general rule is that proof of the commission of separate crimes is not admissible unless such proof has some legitimate tendency to directly establish the defendant's guilt of the charge for which he is on trial, there are some well established exceptions to this rule which are as well established as the rule itself. One of these well established exceptions is where the identity of the person charged with the commission of the offense for which he is then on trial is in issue. *State v. Reese*, 364 Mo. 1221, 274 S.W.2d 304, 307 (1954). The details of the sales were not delved into and objections, when made, were not timely nor directed to the admissibility of evidence of other offenses, the grounds now espoused. We find no error.

■■■ Appellant also makes reference to portions of the prosecutor's argument that the appellant, his brother and three associates were involved in making sales of heroin to Detective Hemphill under this point and contends that the prejudice in this line of argument was that it led the jury to conclude that the appellant was engaged in illegal activity. The argument referred to here was:

"The officer said he was not only purchasing heroin from this defendant, but from this defendant's brother and three other associates of these two brothers.

There was a whole little group of them working together _ _ _"

Appellant's counsel objected on the grounds that the prosecutor was "indicating that there is some type of conspiracy, a drug ring going on here." This objection was sustained. He requested no further relief, and obtained that relief he did ask for. We find no error here either.

We have examined those portions of the record as required by Rule 28.02 and find them to be sufficient.

The judgment of the trial court is affirmed.

CLEMENS, P. J., and STEWART, J., concur.