STATE of Missouri, Respondent,

v.

Jesse Gene CRAWFORD, Appellant.

No. 62852.

Supreme Court of Missouri,
Division No. 1.

July 14, 1981.

Rehearing Denied Sept. 8, 1981.

Robert W. Meyers and David Bloch, Clayton, for appellant.

Thomas G. Auffenberg, Asst. Atty. Gen., Jefferson City, for respondent.

HOUSER, Senior Judge.

Jesse Gene Crawford, convicted by a jury of two counts of first degree robbery, § 569.020 RSMo 1978, and sentenced to concurrent terms of life and thirty years in prison, seeks reversal of the judgment of conviction for failure of proof, reception of improper evidence, and prejudicial conduct of the prosecutor.

Preliminary to a consideration of the merits of this appeal we consider certain correspondence and papers filed by appellant with the Missouri Court of Appeals, Eastern District (to which this appeal was originally taken and from which it was transferred to this Court), re-filed in this Court, ordered to be considered and treated as a pro se motion for the appointment of new counsel, taken under advisement and ordered to be determined with the case.

The basis for the motion is a letter from appellant to the counsel appointed to defend him, subscribed and sworn to before a notary public. In the letter, dated March 27, 1981, written more than one month after appellant's brief on appeal was filed, appellant complained that counsel handled his case "with total incompetence" in that he tried to charge appellant fifteen cents per page for copies of court documents, knowing that appellant was indigent; failed to subpoena a "key witness" for the defense (unnamed) requested by appellant to be summoned; allowed introduction in evidence of a shotgun in no way connected with appellant, and failed to "bring up" the fact that a witness for the prosecution perjured himself; that counsel assigned as a reason for inaction on the perjury that the witness was a high school buddy of counsel. Appellant further complained that during the preceding year seven letters to counsel requesting copies of court papers and general information concerning the case had gone unanswered. Appellant called on counsel to resign from the case, stating that otherwise appellant would be forced to initiate proceedings to have him removed on grounds of ineffective counsel and sue him for malpractice.

By agreement of counsel the Court has been supplied with a Xerox copy of a letter written by appellant to his counsel twelve days after he was sentenced. The letter, dated March 31, 1980, made inquiries about procedure, the possibility of a new trial, when appellant was scheduled to go to court on the "other case", and concluded: "Mr. Meyers even though we lost I want to thank you for trying. I've never set

through a full jury trial before and I didn't know what to exspect [sic], but from my point of view you put up a hell of a fight for me." The valediction: "Your friend."

This is not a motion to vacate, set aside, or correct the sentence. The papers filed by appellant have not been so treated. It is a motion for the appointment of new counsel, based upon alleged ineffectiveness of counsel at the trial stage of these proceedings. His charges relate only to alleged acts and omissions of counsel at the trial level. The effectiveness of counsel in handling the appeal has not been challenged. Appellant does not assert that the brief filed by his counsel is deficient or lacking in any respect.

A motion filed in the Supreme Court for appointment of new counsel is inappropriate and untimely under these facts. Any order by this Court at this time relieving appointed counsel of his representation would be ineffective. The approved and appropriate procedure for obtaining relief from a sentence imposed as a result of the ineffectiveness of counsel begins with the filing in the court where the sentence was imposed of a motion under Rule 27.26 to vacate, set aside or correct the same. That procedure affords the aggrieved party an opportunity to plead facts, not conclusions, which if true would entitle him to relief and to adduce evidence in support of his complaint, and gives counsel accused of ineffectiveness a forum within which to defend his handling of the case.

The motion for the appointment of new counsel is overruled.

The State's evidence: An armed robbery of the named victims occurred at Nelson's Landing Restaurant in St. Louis County on September 10, 1979. Three men wearing green ski masks, carrying shotguns, entered the restaurant, announced a robbery and commanded patrons and employees to lie face down on the floor. One of the three robbers, whose height, build and weight corresponded with that of appellant, required the assistant manager of the restaurant, William Shryock, at gun point, to open the cash register and safe and put the mon-

ey in a sack. This robber, who was not wearing gloves, went back into the office, where there was a telephone. He was alone in the office for a few seconds. After removing wallets from Shryock and a patron the three robbers fled. Shortly after their departure Shryock, who had been forced to lie down on the floor, arose and went into the office to telephone for the police. The telephone was not usable; it looked like someone had "tried to rip it out of the wall." The phone was equipped with an 8-foot cord. The phone case was "in the air", hanging off the edge of the desk "with the little curled wire part that goes to the receiver hanging from that." The receiver was lying on the floor on the other side of the room. Shryock did not touch the phone or receiver. He went to the pay phone in the lobby and called the police, who responded quickly. The office phone was dusted for fingerprints by the police within 20 to 30 minutes after the robbery. No one touched the phone between the time of the robbery and the arrival of the police. All persons in the restaurant who had access to the office were fingerprinted. Five latent fingerprints were lifted. Officer Lawrence Stulte, a qualified fingerprint expert, lifted a palm print from the phone receiver. The prints were taken to the fingerprint unit of the county police department for examination.

Appellant was arrested on September 19, 1979. His finger and palm prints were rolled and filed in the police records on October 9, 1979. An I.D. fingerprint comparison report on his prints was prepared and filed. Comparisons of the prints of the restaurant employees who had access to the office and the print lifted from the phone receiver eliminated each of them as the person who last touched the receiver.

The I.D. fingerprint comparison report, furnished counsel for appellant in response to a pre-trial request for discovery pursuant to Rule 25.32, recited that the fingerprint evidence was interpreted by Detective Charles E. Pyatt on October 9, 1979, and re-examined on that date by Detective D. F. Brian; that Lift Photo B, "Right side of

Phone Receiver in Manager's Office", was identified as "Right Palm of Jesse G. Crawford, W.M. DCN: 54646"; that the print of suspect Jesse G. Crawford was rolled by "Jones, Dept. of Welfare 9/20/79."

Detectives Charles Pyatt and Donald Francis Brian testified. Pyatt, pursuant to court order, took appellant's finger and palm prints on the day before the trial began. He testified that on the basis of twelve points of comparison (eight being sufficient for positive identification) the palm print of appellant taken on October 9, 1979, the palm print of appellant taken the day before trial, and palm print "B" lifted from the phone receiver September 10, 1979, were identical. From his ten years as a qualified expert there was no doubt in his mind as to the identity of the palm print on the phone receiver—it was "all his (appellant's) right hand."

Brian, supervisor of the fingerprint section, a qualified fingerprint expert with eleven years' experience in the field, reevaluated Pyatt's analysis. Upon examination of all the exhibits Brian identified the palm print lifted from the phone receiver as the same as the palm prints of appellant rolled on October 9, 1979 and on the day before trial, on the basis of twelve points of comparison.

■ Appellant's first point is that the State failed to prove his presence at the scene of the crime, in that there was no proof "that the palm print taken at the scene of the crime could have been made only at the time the crime was committed." Although he does not explicitly admit that the palm print on the phone receiver is his, appellant does so implicitly. Appellant took the stand and testified to the following: He entered the restaurant on September 8 or 9, 1979, seeking employment. A person in a white uniform he took to be a cook handed him an application form and had him sit at the office desk to fill it out. He was in the office 10 or 15 minutes, during which time he made two telephone calls—one to his girl friend and another to his stepfather, to obtain information called for on the application form. He finally took the form home,

completed it there, and returned it to the restaurant, where he handed the form to a hostess. Appellant argues that the record "does not exclude the reasonable possibility that the palm print, which was taken from the telephone receiver, and which was the only print identified as being that of the defendant, was made shortly before the robbery in question."

On rebuttal Shryock testified that the restaurant customarily and routinely keeps job applications in a personnel file for 6, 7 or 8 months; that he looked through the files for the month of September, 1979 and found no application in the name of Jesse Crawford, Jesse Wagy (a name sometimes used by appellant), or Terry Weygand (the name used by appellant in making the application. Appellant, on parole at the time, did not want the restaurant people to know he had been convicted); that no male applied for a job in September, 1979; that the only time an application would be filled out in the office would be when the manager or assistant manager was present; that when they were absent job applications are filled out in the lobby; that the office, where the safe and important papers are kept, is locked when the managers are not there.

None of the people referred to by appellant in his testimony (cook, hostess, girl friend, stepfather) appeared as a witness in corroboration of appellant's testimony.

Obviously the jury rejected and disbelieved the testimony of appellant in which he sought to explain and account for the presence of his print on the phone receiver. With his explanatory and excusatory evidence thus excluded the jury was left with evidence that the telephone was "clean and hung up with the receiver attached * * * a matter of minutes" before the robbery; that the assistant manager, Shryock, had "just gotten off" the telephone; that the robber fitting the description of appellant entered the office by himself during the robbery and was there alone for a few seconds; that immediately after the robbery the phone was found torn apart and imprinted with appellant's palm print; that no one touched the telephone between time

of robbery and arrival of police. This evidence, coupled with evidence that the managers and employees used the telephone frequently every day (from which the jury could infer that any print left on the receiver by appellant September 8 or 9 would have been obliterated), is amply sufficient to justify the inference as the only reasonable hypothesis that the palm print found on the receiver was made at the time the crime was committed and that it was appellant's palm print. Compare *State v. Miller*, 490 S.W.2d 36 (Mo.1973).

■ Appellant's second point is that the court erred in admitting in evidence State's Exhibit 19 (the palm print taken from appellant the day before the trial) for the reason that appellant did not know of its existence until trial, and because the exhibit was identified by witnesses who were not endorsed until one day prior to trial, thereby causing appellant undue surprise and depriving him of a fair trial. Appellant complains that he should have been granted sufficient time to review Exhibit 19 and its comparison with the palm print lifted from the receiver, and time "to determine the qualifications and credentials of officers Pyatt and Brian as to their competence to analyze finger and palm prints"; that the State had given no indication of any intention to call any witness prepared to compare the palm print exhibit with the exhibit showing the palm print lifted from the receiver. We review this point for plain error, under Rule 29.12(b), V.A.M.R., appellant not having raised the point in the motion for new trial. *State v. Goff*, 496 S.W.2d 820[1] (Mo.1973).

We find no manifest injustice or fundamental unfairness to appellant under the circumstances of this case. The taking of the palm print and the endorsement of witnesses Pyatt and Brian the day before the trial was tardy. We do not, however, find that appellant was prejudiced or deprived of a fair trial by the late endorsement or the admission of Exhibit 19 in evidence. The testimony of Detectives Pyatt and Brian relating to Exhibit 19 was cumulative of their testimony that the palm print of ap-

pellant taken previously on October 9, 1979 matched and was identical with the palm print lifted from the telephone receiver. Appellant had ample time to compare the latter prints and to determine the qualifications and credentials of the detectives, after receiving the police report with the I.D. fingerprint comparison above described, in response to the order made under Rule 25.-32 some time prior to trial. With that document in hand and with the knowledge that his prints had been taken twice appellant may reasonably be held to have anticipated that Detectives Pyatt and Brian would be called to testify, and to have made any necessary preliminary investigation of their qualifications. Witness Pyatt was subjected to vigorous and searching cross-examination by counsel for appellant. A full opportunity to cross-examine witness Brian was afforded appellant and he was cross-examined. The claim of surprise is without merit. Appellant has not shown that there were existing facts which could have been found and used to impeach Exhibit 16 or to have discounted the testimony of the detectives, if appellant had been given additional time.

The trial court has broad discretion in permitting the endorsement of additional witnesses. The judge in this case did not abuse his discretion in this regard. *State v. Barker*, 572 S.W.2d 185, 187 (Mo.App.1978); *State v. Lorenze*, 592 S.W.2d 523[3] (Mo. App.1979); *State v. Smith*, 556 S.W.2d 70, 72 (Mo.App.1977).

■ Appellant suggests that the State should have asked for a continuance in order to give appellant time to make these investigations, but the burden is not on the State to apply for such a delay. If a defendant considers he has been imposed upon, the burden is on defendant to ask for a continuance, which was not done in this case. In this connection see *State v. Long*, 578 S.W.2d 346[4] (Mo.App.1979).

Appellant's third point is that the court erred in permitting Detective Pyatt to testify on redirect examination on a subject as to which he was not cross-examined. The record follows:

"Q Is there any way the palm print could be a combination of or conglomeration of other people's right palm mixed together?

A No, sir.

Q Why could that not be?

MR. MEYERS: I object, it is improper rebuttal.

THE COURT: Overruled.

A Because I evaluated the details of the lift itself and went to one particular area and found my points of comparison. And, as a check for my own personal satisfaction, went to another area which is over to the right of it and found identical points of comparison which fit in with the total lift itself and the total formation of the hand print, itself."

The general subject of other people's prints *was* touched on in cross-examination, when counsel for appellant asked witness Pyatt "So, do you know how many other prints there were on that phone?

A No, sir, I do not."

On redirect examination it is proper to examine a witness on any matters which tend to refute, weaken or remove inferences, impressions, implications or suggestions which may have resulted from his testimony on cross-examination, notwithstanding the facts elicited may be prejudicial to the defendant. *State v. McNeal*, 539 S.W.2d 722, 728 (Mo.App.1976). In any event the objection came too late—after the question had been answered. *State v. McKnight*, 539 S.W.2d 729, 730 (Mo.App. 1976).

Appellant's fourth point is that the court erred in not declaring a requested mistrial because during the cross-examination of Officer Cira he gave a non-responsive answer indicating that appellant had been arrested for other crimes, thus commenting on appellant's character to his prejudice and depriving him of a fair trial. The question and answer follows:

"Q How would you describe Mr. Crawford's build? You saw him, roughly, at the time he was arrested, did you not?

A For this offense, no."

Counsel for appellant asked for the drastic remedy of a mistrial. He did not merely ask that the words "For this offense" be stricken and the jury instructed to disregard that part of the answer. He sought to subvert the trial. Appellate courts are loathe to reverse judgments for failure to declare a mistrial unless they are convinced that the trial court abused its discretion *as a matter of law* in refusing to do so. *State v. Parker*, 476 S.W.2d 513, 516 (Mo.1972); *State v. Ward*, 457 S.W.2d 701, 709 (Mo. 1970); *State v. Charles*, 542 S.W.2d 606, 611 (Mo.App.1976). We find no such abuse of discretion in this instance. The permissible inference was that appellant had been arrested (not that he had been convicted) on account of other offenses. There was nothing to indicate for what offenses he may have been arrested on other occasions. See *State v. Sykes*, 559 S.W.2d 643 (Mo.App. 1977). The officer's statement was volunteered, and there is nothing to indicate that the answer constituted a conscious effort on the part of the prosecutor or of the witness to inject a prejudicial inference, or that it was anything but an innocent and unintentional revelation. *State v. Lira*, 372 S.W.2d 80 (Mo.1963) and *State v. Parker, supra*, cited by the Attorney General, are dispositive of this point. Furthermore, if the trial court's ruling was indiscreet appellant himself " 'reached back and wiped the purported basis for his motion for a mistrial clean of any prejudice' " by taking the stand and testifying that he had twice been convicted of burglary in Illinois. *State v. McMillan*, 593 S.W.2d 629, 633 (Mo.App.1980).

Appellant's last point is that the court erred in not declaring a mistrial during the State's opening statement, in which the prosecutor four times referred to appellant as "Jesse James Crawford", thereby planting in the minds of the jury the idea that appellant was to be equated with the notorious outlaw, to his prejudice, thus depriving him of a fair trial.

When the prosecutor first called appellant Jesse James Crawford, counsel for ap-

pellant apparently did not consider the allusion damning, for he made no complaint or objection. Through three repetitions of the misnomer counsel continued to accept the appellation without comment. If he considered it prejudicial he should have objected the first time. *State v. Taggert*, 443 S.W.2d 168 (Mo.1969). Counsel waited until the prosecutor finished his opening statement before objecting, at which time he asked for a mistrial and was overruled. No objection having been made at the time the references were made, the point has not been preserved for appellate review. *State v. Robb*, 439 S.W.2d 510 (Mo.1969); *State v. McClure*, 504 S.W.2d 664 (Mo.App.1974). We will review the point, however, to determine whether the ruling constituted plain error under Rule 29.12(b), V.A.M.R.

In *Hadnot v. State*, 110 Tex.Cr.R. 410, 7 S.W.2d 566 (1928), defendant and his two brothers engaged in a series of acts resulting in the death of a person. In the trial of a murder case arising out of the homicide "[t]he district attorney, in some of his questions, referred to them [the brothers] as 'James brothers'. It is contended that this was a reference to them as outlaws and was prejudicially erroneous. The jury must have understood it as in the nature of a facetious remark, and we are not able to believe that appellant could have been injured by same." 7 S.W.2d l. c. 567.

The record does not affirmatively show whether the prosecutor's mistaken use of "James" for "Gene" was inadvertent and innocent, or facetious, or intentional and contrived for effect. On this question we observe that the words "James" and "Gene" sound somewhat similar and could be transposed with ease. Furthermore, after the mistake was called to his attention the prosecutor did not repeat the mistake at any time later in the trial. In arguing the case to the jury the prosecutor did not call appellant an outlaw; did not compare him with Jesse James, and did not mention the words "Jesse James" or "Jesse Gene". Instead, the prosecutor referred to appellant twelve times as "Mr. Crawford" and once as "the defendant".

We conclude that the prosecutor's use of the word "James" for "Gene" was an inadvertent slip of the tongue; that its use was innocent of any ulterior purpose, and that while the prosecutor calling Jesse Gene Crawford by the name of "Jesse James Crawford" was unfortunate, it did not deprive appellant of a fair trial and did not constitute plain error requiring appellate intervention.

The judgment is affirmed.

MORGAN, P. J., DONNELLY, C. J., RENDLEN, J., and TURNAGE, Special Judge, concur.

BARDGETT, J., not participating.