**STATE of Missouri, Respondent,**

v.

**Tony MARTIN, Appellant.**

**No. 52283.**

Missouri Court of Appeals,
Eastern District,
Division Four.

June 30, 1987.

Motion for Rehearing and/or Transfer Denied July 30, 1987.

Application to Transfer Denied Sept. 15, 1987.

Stormy White, Asst. Public Defender, Clayton, for appellant.

William L. Webster, Atty. Gen., Jeffrey Philip Dix, Asst. Atty. Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Presiding Judge.

Appellant appeals from his jury conviction for second degree murder, § 565.004 RSMo 1986 for which he was sentenced as a persistent offender to life imprisonment. Appellant raises three points on appeal. He alleges as error the trial court's admission of: (1) identification testimony; (2) testimony about a state's witness' fear and reluctance to testify, and (3) testimony by an assistant prosecutor that a state's witness did not testify in this case in return for a reduced sentence. We affirm.

On October 10, 1985, at about 12:15 p.m., Guan Higgins, Ricky Clay, Rochelle Fields (age 16), and Carlisa Merrill (age 14), were sitting on the porch at Higgins' residence. Appellant and Johnny Ford approached the foursome. Higgins, Clay, and Fields recognized appellant and Higgins called him by name. Before appellant reached the porch, Higgins went into the house momentarily.

Appellant engaged Clay and the girls in conversation. When Higgins came out of the house, appellant accused him of persuading a girl named Lisa to press charges against him. An argument ensued and appellant pulled a gun out of his jacket. Then Higgins pulled out a gun. Both girls ran off the porch and hid behind a tree 20 to 30 feet away. Clay jumped off the porch and ran around the side of the house. Appellant fired shots at Higgins, possibly hitting him. Higgins ran towards a fence, with appellant and Ford in pursuit. Clay had climbed over the fence, but Higgins was unable to scale it because appellant and Ford pulled him down. According to Clay, who was watching through the cyclone fence, appellant shot Higgins several times. Higgins was found lying in the street and died shortly after the police arrived.

Fields and Merrill were taken to the police station within two hours of the incident. They were separated and shown the same four photographs in an attempt to identify the offender. Both girls positively identified appellant as the person who approached the porch, pulled a gun, and argued with Higgins.

■ In his first point, appellant contends that the trial court erred in overruling his motion to suppress the identification testimony of Fields and Merrill for undue suggestiveness. Appellant failed to object to the in-court identifications and did not preserve his objection for appeal. We review to determine if plain error affected appellant's substantial rights. Rule 30.20; *State v. Overstreet*, 694 S.W.2d 491, 494 (Mo.App., E.D.1985).

■ Appellant contends that the photographic show-up at the police station was unduly suggestive and, therefore, the in-court identifications were unreliable. In *State v. Toney*, 680 S.W.2d 268, 275 (Mo. App., E.D.1984) this court reviewed the principles applicable to identification testimony. Police procedures are examined to determine if they were impermissibly suggestive; if such suggestiveness is established, then the courts look to the reliability of the in-court identification. Reliability is determined by looking at the totality of the circumstances. In considering the totality of the circumstances, the courts look at five factors: (i) the opportunity of the witness to view the criminal at the time of the crime; (ii) the witness's degree of attention; (iii) the accuracy of the witness's pri-

or description of the criminal; (iv) the level of uncertainty demonstrated by the witness at the confrontation; and (v) the length of time between the crime and the confrontation. *State v. Robinson*, 641 S.W.2d 423, 427 (Mo. banc 1982).

The evidence does not establish that the police procedures were unduly suggestive. Within two hours of the shooting, both Fields and Merrill were taken to the police station, separated, and shown the same four photographs. Both girls positively identified appellant as the perpetrator. Appellant claims the show-up was prejudicial because each photograph had a name on it and the girls were aware of his name. However, review of the record and transcript indicates that the names on the photographs were covered at all times during the show-up. Appellant further contends that the other three photographs were so dissimilar to his photograph that the police were essentially telling the girls to pick him out. Dissimilarity and physical appearance alone is insufficient to establish impermissible suggestiveness. *State v. Reasonover*, 700 S.W.2d 178, 183 (Mo.App., E.D.1985). Appellant has not met his burden in that he has presented no evidence of impermissible suggestiveness.

Furthermore, the in-court identifications were independently relevant. Both witnesses were at the scene of the crime, which occurred during daylight hours. Fields knew appellant and recognized him as he approached the porch. Fields, Merrill, and Clay spoke with appellant for several minutes prior to the confrontation, allowing them ample time to observe him in a relaxed atmosphere. The photographic line-up was conducted within two hours of the shooting. We find that the out-of-court identification procedures were not unduly suggestive and the in-court identifications were reliable. The trial court did not err in overruling the motion to suppress. Point denied.[1]

In appellant's second point, he contends that the trial court erred in overruling his objection to certain questions asked by the prosecutor to Merrill on redirect examination. Appellant alleges that these questions constituted evidence of other crimes and raised the inference that the witness was scared and reluctant to testify because of appellant or his associates.

On cross examination, Merrill was asked questions which raised inferences that she was a biased witness who was testifying only because she was a good friend of the victim and other state's witnesses. The prosecutor followed on re-direct examination to ask if she were afraid and if she knew anyone present in the courtroom. She replied that she was scared, and that she did not know anyone in the courtroom. The trial court has broad discretion in directing the scope of redirect examination. *State v. Ross*, 680 S.W.2d 213, 219 (Mo.App., W.D.1984). The prosecutor's questions were proper redirect examination, which refuted and weakened issues and impressions raised on cross examination. *State v. Crawford*, 619 S.W.2d 735, 740 (Mo.1981). The prosecutor's questions did not establish evidence of appellant's prior misconduct or implicate him in other crimes. We find no abuse of discretion. Point denied.

Finally, in appellant's third point, he claims that the trial court erred in allowing Dee Vossmeyer, an assistant prosecutor, to testify that Ricky Clay's testimony was not a result of plea negotiations. Vossmeyer had prosecuted Clay for statutory rape; Clay, a persistent offender, received the minimum sentence of five years.

Appellant claims Vossmeyer's testimony was opinion and not fact and that her testimony invaded the province of the jury. However, at trial, appellant objected to Vossmeyer's testimony as being beyond the scope of relevance. Appellant has waived his right to object because trial

---

1. In his brief, appellant alleges that Fields failed to correctly identify him during pre-trial proceedings. There is no record of the pre-trial hearing before us. We note that Fields had previously identified appellant as the perpetrator two hours after the shooting and made a positive identification during trial, to which appellant did not object. Also, Merrill and Clay corroborated Fields' identification of appellant.

objections may not be broadened on appeal. *State v. Alexander*, 620 S.W.2d 380, 384 (Mo. banc 1981).

 In any event, Vossmeyer's testimony refuted the inference raised during the direct examination of Clay that Clay testified solely in exchange for a reduced sentence. Our review indicates that Vossmeyer participated in, and had full knowledge of the negotiations of Clay's guilty plea. There is no evidence that anyone else joined in the actual negotiations. Vossmeyer's testimony weakened appellant's attempted impeachment of Clay's testimony and, as such, was properly admitted. *State v. Crawford*, 619 S.W.2d 735, 740 (Mo. 1981). This point is denied.

The judgment of the trial court is affirmed.

SIMON and STEPHAN, JJ., concur.