**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Danny KITTRELL,
Defendant–Appellant.**

**Nos. 53765, 56097.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Sept. 19, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 25, 1989.

Application to Transfer Denied
Dec. 12, 1989.

Susan L. Hogan, Columbia, for defendant-appellant.

William L. Webster, Atty. Gen., Elizabeth L. Ziegler, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PUDLOWSKI, Presiding Judge.

This is a combined direct and Rule 29.15 appeal from a conviction of first degree murder under § 565.020.2 RSMo 1986. Defendant was sentenced to life imprisonment without possibility for probation or parole. We affirm.

On appeal, the state is entitled to have the evidence reviewed in the light most favorable to the verdict and also to be afforded all reasonable inferences from the evidence. *State v. Rodden,* 728 S.W.2d 212, 213 (Mo. banc 1987).

On May 16, 1986, John Jaghab flew into St. Louis to visit his friend Rick Machia. Machia picked Jaghab up at Lambert Field in St. Louis around 2:00 p.m. The two then left the airport and drove towards Machia's home in Jefferson County. They stopped twice along the way to buy beer. Before reaching Machia's home, the two men stopped at the home of two of Machia's friends, Patty Weadon and Debbie Michaelson. They left there and went to Machia's home for dinner, returning to Weadon and Michaelson's home after dinner. They drank beer and socialized until 7:30 p.m. They then went to another residence where they engaged in further drinking and socializing. Between 9:00 and 9:30 the two men went to another residence in search of marijuana. They were unsuccessful so they then drove to defendant's residence in a trailer park in Fenton to attempt to buy marijuana.

The two men arrived at the defendant's trailer about 10:00 p.m. Defendant's girlfriend had earlier invited Weadon and Michaelson to a barbecue at defendant's trailer. Rick Machia then bought one-quarter ounce of marijuana from the defendant for thirty dollars. Jaghab, the victim, was standing close to Machia during the sale. When Machia asked him, the victim stated that he would split the sale with Machia. Victim then pulled his wallet out of his back pocket and said, "I brought plenty of money out here just to blow." At that time defendant was sitting about two to three feet away from the two men. Machia told victim that he would get his contribution later.

The two men stayed at the barbecue and continued eating and drinking. Greg Hollnagle, a friend of theirs that accompanied them to the barbecue, passed out at the picnic table. At one point he got up and said to defendant "I'm going to beat your ass." Later, Hollnagle was carried to his van and his wife drove him home.

About 1:30 a.m. the victim was in the trailer along with Machia, the defendant Danny Kittrell, and the other males. The victim was intoxicated. He fell down inside the trailer. Machia then walked the victim out to the car and placed him in the back seat. Machia's car was about 30 feet from defendant's trailer.

Machia returned to the picnic table outside the trailer. Shortly thereafter, Machia looked over to the car and saw defendant kneeling outside the open car door and talking. About five minutes later, those assembled at the picnic table heard a scream. Machia identified the voice as the victim's. Victim was not in the car or at the party. Defendant was also missing.

The other members of the party began searching for victim and the defendant. They shined flashlights into the woods and called out for the two. At one point they heard someone running through the woods but no one answered the calls.

Deputy Robert Scott of the Jefferson County Sheriff's Department arrived at defendant's trailer at approximately 3:00 a.m. He was responding to a neighbor's complaint about a disturbance in the area. Scott was informed of the missing men. He searched the woods but did not find them.

Scott then returned to his car, drove down Treeview Lane and made a right on Flint Drive. As he was driving along Flint, Scott observed the defendant staggering towards him. He was covered with blood and wearing only cut-off blue jean shorts. He had a strip of denim tied around his wrist. Scott stopped his car and asked defendant what had happened to him. Defendant stated that he had been assaulted. Scott then called an ambulance. Defendant had $28 in his wallet and $110 in his pocket.

When the ambulance arrived Scott returned to defendant's trailer. In the meantime Machia called his parents. Machia's parents came over to the trailer and proceeded to search for the victim.

As dawn approached, Machia found the victim lying in a drainage ditch in the woods behind the trailer. Victim had been stabbed 29 times with four of the wounds being fatal. Victim had only 15 to 20% of his blood left in his body. An autopsy later revealed that victim had a blood alcohol content of .25 grams per deciliter. Investi-

gators found splatters of blood on foliage through the woods to the point where two drainage ditches met. There was a barefoot print under the water in a ditch and a very large pool of blood on sandy ground. They followed the blood splatters until they found an Armstrong Forge knife, human feces, and vomit in a marshy area. A butcher block containing the same brand name of knives was in defendant's trailer. The knife was consistent with the weapon that inflicted the wounds on the victim. No blood was found in the area defendant claims he was attacked.

While at the hospital defendant indicated he thought the victim attacked him. The next thing he remembered was waking up in the hospital. Defendant did not remember how much money he had on him. On July 25, 1986, defendant was arrested for first degree murder. At that time he stated he had not committed the murder but that Greg Hollnagle did. On September 27, 1986, a resident found victim's wallet in the backyard of his trailer. The wallet was empty.

At trial, defendant testified that he was paid $130 the day preceding the day of the murder. He stated that while he was urinating behind the dumpster he was jumped by one, or two unidentified attackers, was pushed down the hill and cut his hand. He got up and ran away. He said the next thing he remembered was waking up in the hospital. He denied ever threatening or stabbing the victim.

Defendant raises seven points on appeal. The first charges that trial court erred in admitting states exhibit 16 over objection by defendant that it was unduly inflammatory and gruesome. The second alleges error in trial court's denial of defendant's motion for mistrial after prosecutor asked the defendant whether he had made a statement to his future wife concerning the location of victim's body. The third states that the trial court erred in not granting defendant's motions for acquittal because the state failed to make a submissible case. The last four points deal with error by the motion court in denying defendant's motion for post-conviction relief without granting

an evidentiary hearing and for dismissing the motions.

In his first point defendant contends that the trial court erred in admitting state's exhibit 16, a photograph, over defendant's objection that its probative value was far outweighed by its prejudicial effect due to its lurid, graphic and gruesome nature.

■ The trial court has broad discretion in determining the admissibility of photographs at trial. *State v. Pollard,* 735 S.W.2d 345, 348 (Mo. banc 1987). Photographs are admissible "to show the identity of the victim, the nature and extent of his wounds, and the cause of his death." *Id.* at 348. "As the state must sustain its burden it should not be unduly limited as to the manner of satisfying their quantum of proof." (Citations omitted). *State v. Clemons,* 643 S.W.2d 803, 805 (Mo. banc 1983).

■ State's exhibit 16 is indeed a gruesome photograph, but only because it is that sort of crime. *See State v. Guinan,* 665 S.W.2d 325 (Mo. banc 1984), *cert. denied* 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984). The photograph in question is admissible. It is the only picture showing the fatal chest wound. Trial court did not abuse its discretion. Defendant's first point is denied.

The second point defendant raises in this appeal alleges that the trial court erred in denying his motion for mistrial after the prosecutor questioned the defendant on cross-examination about whether he had made a statement to his future wife regarding the location of the victim's body. The record follows:

Q. You didn't tell them you were confused. Do you remember telling Debbie Richards that you rolled John Jaghab down the hill and where his body was located?

A. No. ma'am, I don't.

After defendant responded to the question, defense counsel requested a mistrial on the basis that the prosecutor had made reference to a statement made to appellant's wife, who could not be compelled to testify. The court overruled the motion but in-

structed the jury to disregard the last question.

■ It is well recognized that when an improper question is asked and answered, the answer is not harmful, and the trial court instructs the jury to disregard the question, there can be no prejudicial error. *State v. Crespo,* 664 S.W.2d 548, 554 (Mo. App.1983). In this case, the state was bound by defendant's negative response and the court's instruction to the jury. The trial court properly exercised its discretion. Furthermore, the objection came too late. The question had already been answered. *State v. Crawford,* 619 S.W.2d 735, 740 (Mo.1981). Defendant's second point is denied.

Defendant's third point charges that the trial court erred overruling appellant's motions for acquittal because the state failed to make a submissible case, in that the state failed to establish criminal agency of the defendant in causing the victim's death, since the state failed to adduce any evidence to demonstrate active participation by defendant in the offense.

■ The evidence in this case is reviewed in the light most favorable to the verdict, affording to the state all reasonable inferences and ignoring contrary evidence and inferences. *State v. Guinan,* 665 S.W.2d 325, 327 (Mo. banc 1984), *cert. denied* 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984). This is a circumstantial evidence case. Therefore the facts and circumstances upon which the state relies must be consistent with each other and defendant's guilt and inconsistent with any reasonable theory of his innocence. *State v. Goddard,* 649 S.W.2d 882, 884 (Mo. banc 1983) *cert. denied,* 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 689 (1983). The circumstances do not need to show absolute conclusions of guilt or impossibility of innocence. Just because other possible hypotheses exist does not contribute reason enough to remove the case from the jury. *Id.*

■ Defendant claims he was attacked and cut behind the dumpster, then rolled down the hill. His radial artery was severed. This would cause a severe spirting or gushing of blood. No blood was found in the area defendant claims this attack took place. The knife used in the killing was of the same make as the knives in defendant's residence. The knife was consistent with the kind of knife that would have inflicted the wounds on the victim. A blood trail through the woods that led to the knife was determined to be consistent with defendant's blood. The denim strip that was wrapped around defendant's wrist was cut, not torn from his shorts. The defendant was found with $28 in his wallet and $110 in his shorts pocket. These are just some of the incriminating circumstances around which the state built its case.

The defendant's hypothesis of innocence, when reviewed in the light of the circumstantial evidence, is not reasonable. We find that the state met its burden in proving defendant's guilt beyond a reasonable doubt. The trial court properly denied the motions. Defendant's third point is denied.

■ We turn next to an examination of defendant's Rule 29.15 motion in which he raises four additional points on appeal. The first point asserts that the motion court was clearly erroneous in dismissing defendant's 29.15 motion without an evidentiary hearing because counsel did not amend the motion in a timely manner. In the past, we have held that appeals involving similar contentions in the predecessor post conviction rule, Supreme Court Rule 27.26(h) (repealed effective 1/1/88), were not proper. *Allbritton v. State,* 747 S.W.2d 687, 689 (Mo.App.1988), *Jones v. State,* 736 S.W.2d 439, 440 (Mo.App.1987). Point denied.

The next two points raised by defendant states that the motion court clearly erred in dismissing the motion and refusing to consider appellant's untimely filed amended motion because these time limits violate his rights to due process and suspends writ of habeas corpus.

■ The Missouri Supreme Court considered the constitutionality of the time limitations contained in Supreme Court Rules 24.035 and 29.15. The court found these mandatory limitations to be reason-

able, serving the legitimate interest of avoiding delay in the processing of prisoner's claims and in preventing the litigation of stale claims. *Day v. State,* 770 S.W.2d 692 (Mo. banc 1989). Defendant's points denied.

■ The final point defendant raises addresses the merits of a claim raised in his untimely filed second amended motion. The claim of ineffective assistance of counsel due to a failure to object to statements made by the prosecutor during the closing argument. This issue is not properly before this court because it was not considered by the motion court. Claims not properly presented to the motion court cannot be reviewed on appeal, for "plain error" or otherwise. *Davis v. State,* 680 S.W.2d 324, 326–327 (Mo.App.1984); *Moore v. State,* 624 S.W.2d 520, 522–523 (Mo.App. 1981); *See also St. Louis County v. McClune,* 762 S.W.2d 91, 92–93 (Mo.App. 1988). Defendant's point denied.

We affirm the trial court's conviction and the denial of defendant's motion.

CRANDALL and KAROHL, JJ., concur.