STATE of Missouri, Respondent,

v.

Lloyd SCHLUP, Appellant.

No. 68029.

Supreme Court of Missouri,
En Banc.

Feb. 17, 1987.

Thomas R. Schlesinger, Chesterfield, for appellant.

William L. Webster, Atty. Gen., Elizabeth A. Levin, Asst. Atty. Gen., Jefferson City, for respondent.

WELLIVER, Judge.

Appellant, Lloyd E. Schlup, was convicted of capital murder,[1] § 565.001,[2] RSMo 1978,[3] on December 11, 1985. After finding aggravating circumstances, as required by § 565.012,[4] the jury imposed a sentence of death. Appellant appeals from the conviction and sentence.

This court has exclusive appellate jurisdiction in all cases in which the penalty of death is imposed. Mo. Const. art. V, § 3. We affirm both the judgment and the sentence.

---

[1]. 565.001. Capital murder defined
Any person who unlawfully, willfully, knowingly, deliberately and with premeditation kills or causes the killing of another human being is guilty of the offense of capital murder.

[2]. Repealed October 1, 1984, currently § 565.020, RSMo Cum.Supp.1984.

[3]. All statutory references herein are to RSMo 1978, unless otherwise indicated.

[4]. Repealed October 1, 1984, currently § 565.032, RSMo Cum.Supp.1984.

## I

In February 1984, appellant was an inmate at the Missouri State Penitentiary in Jefferson City and was assigned to Building 5–A of the Special Management Unit (SMU), the super-maximum security housing facility within the penitentiary. Building 5–A is divided into eight "walks" or rows of cells on four levels. Each walk is self-contained and is accessible only through a single secured gate. Building 5–A inmates are generally locked in their cells at all times except mealtimes. Appellant and codefendants Robert O'Neal [5] and Rodnie Stewart [6] lived on 2 walk, while the murder victim, Arthur Dade, lived on the same level, on 1 walk.

At approximately noon on February 23, 1984, the inmates on walks 1 through 4 were released for lunch. While the other inmates were walking towards the dining hall in Building 5–C, Sergeant Flowers and Corrections Officer Maylee observed appellant and his codefendants running towards 1 walk, away from the dining hall in Building 5–C and against the flow of inmate traffic. Appellant and codefendant O'Neal proceeded past the 1 walk security gate, while codefendant Stewart waited just outside the gate with a pint-sized ice cream receptacle containing what appeared to be a steaming liquid. Dade was walking, unarmed, towards the dining hall and was near the 1 walk gate when Stewart threw the contents of the ice cream container into Dade's face, causing Dade to raise his hands to his face. Appellant then jumped on Dade from behind, grabbing and restraining Dade's arms. O'Neal drew a twelve-inch, homemade weapon resembling an ice pick, ran forward, and stabbed Dade four times, penetrating his heart and lungs. Dade ran the short distance to the entrance of 1 walk, collapsed and died. Dade had made no hostile moves towards either appellant or his codefendants.

A corrections officer arrived and restrained Stewart. O'Neal ran down 1 walk, away from the dining hall, broke a window with his hand, and threw out the weapon which he had used to stab Dade, lacerating the back of his right hand. O'Neal then washed his hands and arms of blood at a nearby sink, walked quickly to the dining hall bathroom and discarded bloodstained clothing.

Shortly after O'Neal left for the dining hall, appellant yelled out a window near where O'Neal had discarded the murder weapon and then proceeded past the murder scene to the dining hall. Both appellant and O'Neal were apprehended in the dining hall.

At trial, appellant called three witnesses in an attempt to establish an alibi defense. The jury found appellant guilty of capital murder. The jury found two aggravating circumstances, that the murder was committed by a person in a place of lawful confinement and that appellant had a substantial history of serious assaultive criminal convictions. The jury imposed a sentence of death. We examine the issues raised by appellant.

## II

Appellant's chief allegation of error and the one argued to the Court was that the prosecution went too far in the penalty phase of the trial by putting in evidence the details of prior crimes rather than limiting himself to evidence of only the conviction of the prior crimes.

The aggravating circumstance sought to be proved by the prosecutor with this evidence was the statutory aggravating circumstance of "a substantial history of serious assaultive convictions." § 565.012.2(1). The United States Supreme Court addressed a similar aggravating circumstance in *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), where it stated:

We think that the Georgia court wisely has chosen not to impose unnecessary restrictions on the evidence that can be

---

**5.** O'Neal was convicted of capital murder and sentenced to death. This Court affirmed his conviction and sentence. *State v. O'Neal,* 718 S.W.2d 498 (Mo. banc 1986).

**6.** Stewart, also known as Herbert Chastain, was convicted of capital murder and sentenced to life imprisonment without parole for fifty years. *State v. Stewart,* 714 S.W.2d 724 (Mo.App.1986).

offered at [a presentence] hearing and to approve open and far-ranging argument. So long as the evidence introduced and the arguments made at the presentence hearing do not prejudice the defendant, it is preferable not to impose restrictions. We think it desirable for the jury to have as much information before it as possible when it makes the sentencing decision. *Gregg* 428 U.S. 153, 203–04, 96 S.Ct. 2909, 2939, 49 L.Ed.2d 859 (1976).

In our prior decisions, we too have declined to impose strict boundaries on the admission of evidence during the penalty phase. *State v. Malone,* 694 S.W.2d 723, 727 (Mo. banc 1985), *cert. denied,* — U.S. ——, 106 S.Ct. 2292, 90 L.Ed.2d 733 (1986); *State v. Bannister,* 680 S.W.2d 141, 146 (Mo. banc 1984), *cert. denied,* 471 U.S. 1009, 105 S.Ct. 1879, 85 L.Ed.2d 170 (1985); *State v. Gilmore,* 661 S.W.2d 519, 524 (Mo. banc 1983), *cert. denied,* 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984).

The evidence to which appellant's counsel most strenuously objects is the testimony of Harold Johnson, a former cellmate of appellant, who was the victim in the case involving appellant's second degree assault and sodomy convictions, alleged to be supportive of aggravating circumstance number two.

We cannot do other than concede to counsel that this witness had the base vocabulary required to most vividly and graphically describe a sexual assault involving participants of the same sex in prison surroundings. We would also remind counsel that we know of no way to describe sexual assaults involving male participants in prison surroundings which would not be both repugnant and repulsive to the ears of the ordinary listener or the eyes of the ordinary reader.

We believe that when the legislature used the words *"substantial* history of *serious* assaultive criminal convictions"* (emphasis added), they contemplated there being presented to the jury something more than bare evidence of the conviction of the crime of "assault" or the bare conviction of some other crime which may include the element of assault. The jury is required to find a "substantial" history of "serious" assaultive criminal convictions. Assault can range from acts which constitute little more than conduct offensive to another to the most vile, sordid, repugnant and repulsive sexual assault upon the body of another. Sodomy can range from conduct between two consenting adults in the privacy of their own bedroom[7] to the vile, sordid, repulsive conduct described in this record, conduct so base and vile that we believe there could be no social benefit from copying it in detail into this public opinion.

It is easy to fall into the trap of reasoning that prior convictions generally are admissible only for limited purposes in determining guilt; that these convictions and crimes also are admissible only for some limited purpose in the sentencing phase; and, that the more detail and vividness utilized in referring to them, the more prejudice there may be to the appellant. Such reasoning would be applicable were we dealing with the guilt phase of the trial. But we are not here dealing with the guilt phase of the trial. These prior convictions and prior crimes are not offered and have nothing to do with the guilt phase of the trial. They relate only to the punishment phase, phase two of the trial.

In phase two, there were two choices— life imprisonment with no eligibility for parole for fifty years, or death. Section 565.-008.1. Proof of a *substantial* history of *serious* assaultive criminal convictions supports imposition of the death penalty. The more "substantial" the history and the more "serious" the degree of the assaultive convictions, the better supported the death penalty. Prejudice to the defendant becomes quite a different thing in this instance, and must be tested by other than the usual and customary standards.

 Prejudice in this instance results only if the State exceeds permissible limits in showing a *substantial* history of *serious* assaultive criminal convictions. Clearly some details and description of the crimes must be shown for the jury to find that the

---

**7.** *See Bowers v. Hardwick,* — U.S. ——, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986).

convictions were for *serious* assaultive crimes. The ultimate question is where shall the line be drawn to balance the protection of the defendant's rights against the public interest in punishing criminals and deterring crime. It is our view that the degree of latitude permitted the State should be in direct proportion to the degree of relevance and the degree of probative value of the evidence in question. In this instance, the killing which is here charged placed squarely in issue defendant's respect for the life and rights of fellow prisoners. As vile, ugly, repugnant and repulsive as the witness Johnson's testimony may have been, nothing could have more vividly and accurately described appellant's lack of respect for the life and rights of other prisoners. There is neither insinuation nor allegation that the testimony in question is false or untrue. While appellant said that he had no memory of the acts, he did admit that he had done some awful things to Johnson. No evidence could have been more relevant. No evidence could have been more probative of a *substantial* history of *serious* assaultive criminal convictions.

We do not believe that the trial court abused its discretion in permitting witness Johnson to testify, as he did, regarding details of the prior crimes committed against him by appellant.

■ Based upon our examination of prior cases involving inmate killings [8] we have no doubt that this jury would have assessed the sentence of death based solely upon, (1) the commission of the charged killing while in lawful custody together with (2) bare evidence of the prior convictions. Our judgment, we believe, is supported by the jury's assessment of the death penalty for co-defendant O'Neal in the companion case in which the record showed the commission of the same crime and the defendant O'Neal's prior record of

convictions showing a substantial history of serious assaultive criminal convictions, without testimony from the victims of those crimes. *State v. O'Neal,* 718 S.W.2d 498 (Mo. banc 1986). We see no material significance or distinction between holding a victim's arms so that another can stab him and stabbing a victim who is being held by another in order to permit the stabbing.

Reading all of the capital murder and death penalty statutes [9] together, this type of case appears to be precisely the type of case that the legislature had in mind in drafting the capital murder statutes. Here, appellant exhibited a total and complete disregard for the lives and rights of fellow prisoners. Appellant is already serving one life sentence and has been convicted of other violent felonies including first degree assault, two counts of second degree assault and two counts of sodomy. "The life sentence that appellant is already serving ... did not deter appellant from committing [this] murder. The imposition of yet another life sentence would serve no purpose other than to signal that there is no real cost for prisoners to kill while in confinement." *State v. Bolder,* 635 S.W.2d 673, 690 (Mo. banc 1982) (footnote omitted).

If the jailhouse lawyers have failed to read and if the inmates have failed to heed the prior statements of this Court regarding prison killings, it may be that they should be repeated here.

> Those imprisoned for violating our laws have cast upon the state both the expense of, and the responsibility for, their safe care while in confinement. We have always held the state to the highest standards in the exercise of that responsibility. Those for whom the state must bear responsibility should be held to an equally high standard of conduct. We are unaware of either sound reason or social policy for excusing the senseless killing

**8.** *State v. O'Neal,* 718 S.W.2d 498 (Mo. banc 1986); *State v. Zeitvogel,* 707 S.W.2d 365 (Mo. banc 1986); *State v. Guinan,* 665 S.W.2d 325 (Mo. banc 1984), *cert. denied,* 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed. 156 (1984); *State v. Trimble,* 638 S.W.2d 726 (Mo. banc 1982), *cert. denied,* 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed.2d 1031

(1983); *State v. Bolder,* 635 S.W.2d 673 (Mo. banc 1982).

**9.** §§ 565.001, 565.006–.016 (repealed October 1, 1984, currently §§ 565.002–.020, 565.025–.040, RSMo Cum.Supp.1984).

of either fellow prisoners or corrections officers.

*State v. Shaw,* 636 S.W.2d 667, 677 (Mo. banc 1982), *cert. denied,* 459 U.S. 928, 103 S.Ct. 239, 74 L.Ed.2d 188 (1982). To those words we today add; perhaps either of the penalties for capital murder have the potential for protecting the public against repeated killings by the offender, but only the penalty of death can protect guards and fellow inmates against repeated killings by those already in confinement. This Court owes it to the public and to the inmates of our prisons to do everything within its power to stop prison killings. Nowhere is there more justification for imposition of the death penalty.

### III

■ Appellant alleges that respondent failed to provide sufficient notice of Harold Johnson's penalty phase testimony, in violation of § 565.006.2,[10] and that, therefore, the trial judge abused his discretion in allowing Johnson to testify. Section 565.-006.2 provides, in pertinent part, "Only such evidence in aggravation as the prosecution has made known to the defendant prior to his trial shall be admissible." We have determined previously that

> notice of the aggravating circumstances ... is sufficient where the information states facts sufficient to give notice of the crime charged and contains the names of all witnesses from whom may be discovered the evidence of the aggravating circumstances. Such notice is all the process that is due even where the death penalty may be imposed.

*State v. Trimble,* 638 S.W.2d 726, 735 (Mo. banc 1982), *cert. denied,* 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed.2d 1031 (1983). Respondent notified appellant that it would raise appellant's prior convictions for assault and sodomy about which Johnson testified. Johnson's statement was attached to the notice given by respondent to appellant. The trial court did not abuse its discretion in finding that respondent had furnished appellant sufficient notice.

**10.** Repealed October 1, 1984. Section 565.005, RSMo Cum. Supp. 1984 sets forth the new no-

### IV

■ Appellant argues that the introduction of Johnson's extensive testimony concerning the criminal conduct underlying prior convictions violated the Fifth Amendment Double Jeopardy Clause. Appellant purports to rely on *Arizona v. Rumsey,* 467 U.S. 203, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984), in which the United States Supreme Court found that the imposition of a life sentence during the penalty phase "amounts to an acquittal on the merits [of the penalty question] and, as such, bars any retrial of the appropriateness of the death penalty." *Rumsey,* 104 S.Ct. at 2310. *See also Bullington v. Missouri,* 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981).

In this case, the penalty issue was submitted only the one time that resulted in the imposition of the death penalty by the jury. There is no *Rumsey* or *Bullington* issue. There was no double jeopardy.

### V

■ Appellant contends that the trial court erred in refusing to grant a mistrial after respondent questioned James Eberle, commander of the SMU at the time of the murder, about an Inter-Office Communication (IOC) written by Sergeant Flowers. Appellant claims Eberle's testimony concerning the IOC was inadmissible hearsay. "Testimony of a witness regarding the statement of another is hearsay and inadmissible only when the statement is offered as proof of the matters therein stated. *Mash v. Missouri Pacific Railroad Co.,* 341 S.W.2d 822, 827 [ (Mo.1960) ]." *Still v. Travelers Indemnity Co.,* 374 S.W.2d 95, 102 (Mo.1963). *Cf.* Fed.R.Evid. 801. Appellant had cast an implication that Eberle had assisted and collaborated with Officers Flowers and Maylee in the preparation of their statements and IOC reports. The State questioned Eberle about Flowers' IOC to show that they had not collaborat-

tice requirements.

ed. The Flowers IOC was neither offered nor admitted in evidence. Respondent did not question Eberle to show the truth of the matters asserted in the IOC. The IOC was not hearsay in this connection. The trial court did not abuse its discretion in denying appellant's motion for a mistrial.

## VI

■ Appellant asserts that the trial court erred in admitting into evidence two photographs depicting Corrections Officer Maylee's view of the murder scene. Appellant claims that the photographs are irrelevant and immaterial. "Evidence is relevant if the fact it tends to prove or disprove is a fact in issue, or to corroborate evidence which is relevant and which bears on the principal issue. Before evidence can be excluded on the ground that it is irrelevant, it is essential that it appears so beyond doubt." *State v. Sanderson,* 528 S.W.2d 527, 531 (Mo.App.1975). *See State v. Mercer,* 618 S.W.2d 1, 9 (Mo. banc 1981), *cert. denied,* 454 U.S. 933, 102 S.Ct. 432, 70 L.Ed.2d 240 (1981). The photographs of Maylee's view of the scene tend to corroborate Maylee's testimony by demonstrating that he could have witnessed the murder from his station. There was no error in admitting the photographs.

## VII

■ Appellant contends that the photographs are prejudicial since Maylee did not authenticate the photographs or testify that they were taken from the exact location at which he was standing when he witnessed the murder. "The accuracy of the photograph may be proved by anyone who knows the facts." *State v. Rogers,* 523 S.W.2d 344, 347 (Mo.App.1975); *Cf.* Fed.R.Evid. 901(a), (b)(1). Sergeant Flowers was familiar with the location and testi-

fied that the photographs were fair and accurate representations of what they purported to show. The fact that Maylee, who was physically unable to appear, did not testify that the photographs depicted his exact vantage point is merely a factor which affects the weight to be given the photographs by the jury. *State v. Rogers,* 523 S.W.2d at 347. The trial court has broad discretion in determining the admissibility of photographs at trial. *State v. Guinan* 665 S.W.2d 325, 331 (Mo. banc 1984), *cert. denied,* 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984); *State v. Davis,* 653 S.W.2d 167, 175 (Mo. banc 1983). The trial court did not abuse its discretion in admitting the photographs.

## VIII

We now turn to our statutorily mandated duty to independently review the imposition of the death sentence. § 565.014.[11] We find no indication that the death sentence was imposed under the influence of passion, prejudice, or any other contributing factor.

We have previously examined the alleged aggravating circumstances required by § 565.012 [12] and found them to be supported by the evidence.

■ Finally, we are charged to consider "whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." § 565.014.3(3). We have spoken at length of the total appropriateness of imposing the death penalty for murders occurring within our correctional institutions. We have held the death penalty to be neither excessive nor disproportionate in similar cases. *State v. O'Neal,* 718 S.W.2d 498 (Mo. banc 1986); *State v. Driscoll,* 711 S.W.2d 512 (Mo. banc 1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 329,

---

**11.** Repealed October 1, 1984; currently § 565.-035, RSMo Cum.Supp.1984.

 565.014.3 With regard to the sentence, the supreme court shall determine:

 (1) Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; and

 (2) Whether the evidence supports the jury's or judge's finding of a statutory aggra-

vating circumstance as enumerated in section 565.012; and

 (3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

**12.** Repealed October 1, 1984, currently § 565.-032, RSMo Cum.Supp.1984.

243

93 L.Ed.2d 301 (1986); *State v. Roberts,* 709 S.W.2d 857 (Mo. banc 1986); *State v. Zeitvogel,* 707 S.W.2d 365 (Mo. banc 1986); *State v. Guinan,* 665 S.W.2d 325 (Mo. banc 1984), *cert. denied,* 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984); *State v. Trimble,* 638 S.W.2d 726 (Mo. banc 1982), *cert. denied,* 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed.2d 1031 (1983); *State v. Shaw,* 636 S.W.2d 667 (Mo. banc 1982), *cert. denied,* 459 U.S. 928, 103 S.Ct. 239, 74 L.Ed.2d 188 (1982); *State v. Bolder,* 635 S.W.2d 673 (Mo. banc 1982). It is neither excessive nor disproportionate in this case.

The judgment and sentence of death are affirmed.

All concur.