STATE of Missouri, Respondent,

v.

Roosevelt POLLARD, Jr., Appellant.

No. 67829.

Supreme Court of Missouri,
En Banc.

July 14, 1987.

Rehearing Denied Sept. 15, 1987.

Charles D. Moreland, Asst. Public Defender, Rolla, for appellant.

William L. Webster, Atty. Gen., Melodie Powell, Asst. Atty. Gen., Jefferson City, for respondent.

WELLIVER, Judge.

Appellant, Roosevelt Pollard, Jr., was convicted of capital murder,[1] § 565.001,[2] RSMo 1978,[3] on August 29, 1985. On August 30, 1985, after finding aggravating circumstances, as required by § 565.012,[4] the jury imposed a sentence of death. Appellant appeals from both the conviction and sentence.

■ This Court has exclusive appellate jurisdiction in all cases in which the penalty of death is imposed. Mo. Const. art. V, § 3; *State v. Schlup*, 724 S.W.2d 236 (Mo. banc 1987), *cert. denied*, —— U.S. ——, 107 S.Ct. 3198, 96 L.Ed.2d 685 (1987). We affirm both the judgment and the sentence.

## I

On the morning of December 12, 1985, appellant had decided to visit relatives in Arkansas. Appellant, accompanied by Maurice Alexander, Michael Hammon, and Robert Sands, drove south from St. Louis on Interstate 55 in appellant's 1968 Buick Electra 225 automobile. While driving south on Interstate 55, appellant's battery went dead. Appellant removed a .22 caliber automatic rifle from his truck and loaded it with ammunition. Appellant brought the loaded rifle with him while he and Hammon sought another battery. Appellant and Hammon found a battery in a car at a nearby farm. Appellant removed the battery and brought it back to his car. Appellant returned the loaded rifle to his trunk and he and his companions continued south on Interstate 55. Later, one of appellant's tires went flat and he exited the highway at the rest area near Steele, in Pemiscot County, Missouri. Since appellant had no spare tire, Alexander and Hammon went with Howard Henry, the rest area maintenanceperson, to a nearby service station to purchase a new tire.

Shortly after Alexander and Hammon left for a new tire, the victim, Richard Alford, drove into the rest area in his new, 1984 Pontiac Bonneville and parked one spot away from appellant's disabled car. Appellant told his remaining companion, Robert Sands, "I want that car. I'm going to get that car." Appellant then removed the loaded rifle from his trunk. After Alford had returned from the restroom, appellant stood in the space between appellant's car and Alford's car, near the driver's window of Alford's car. Appellant shot Alford through the window, turned and looked at Sands, then turned back and shot Alford two more times.

Appellant then moved Alford's body from the driver's seat, got into Alford's car, and drove off with the body. Appellant returned without Alford's body after twelve or thirteen minutes to see if Alexander and Hammon had returned with the new tire. Upon learning that they had not yet returned, appellant left again in Alford's car, which he drove to and left at the rest area on the northbound side of Interstate 55. Appellant walked across the highway from the northbound rest area back to the southbound rest area. Sands, and later Hammon, noticed that appellants pants and shoes were wet and muddy. Hammon also later noticed that appellant's shoes were bloodstained.

---

1. **§ 565.001. Capital murder defined**
   Any person who unlawfully, willfully, knowingly, deliberately and with premeditation kills or causes the killing of another human being is guilty of the offense of capital murder.

2. Repealed October 1, 1984, currently § 565.020, RSMo 1986.

3. All statutory references herein are to RSMo 1978, unless otherwise indicated.

4. Repealed October 1, 1984, currently § 565.032, RSMo 1986.

Appellant and his companions then proceeded south on Interstate 55 in appellant's car, upon which the new tire had been placed. The group stopped and rented a room at the Ramada Inn in Blytheville, Arkansas, a few miles from the Missouri state line. At the motel, Sands noticed appellant wiping off a gold and diamond ring, which appellant told Sands he had taken from Alford's finger. Appellant later sold the ring at a pawn shop in St. Louis.

While at the motel, appellant's companions, who had discussed Alford's murder, confronted appellant. Appellant told them not to worry, that he had disposed of the body and moved the car to the northbound rest area. Appellant's companions were apprehensive and convinced appellant to return to St. Louis.

The Pemiscot county Sheriff's Department found Alford's body near the rest area in a drainage ditch under an Interstate 55 overpass.

At trial, appellant attempted to show that he was not guilty by reason of mental disease or defect due to heroin and phencyclidine (PCP) abuse and PCP psychosis. The jury found appellant guilty of capital murder. As aggravating circumstances, the jury found that appellant killed Alford for the purpose of receiving money or other thing of monetary value,[5] and that appellant had been convicted of murder in Illinois.[6] The jury imposed the sentence of death. We examine the issues raised by appellant.

## II

Appellant alleges that the trial court erred in allowing in evidence of his Illinois murder conviction, since the conviction was

under appeal[7] and since the entire conviction was not read to the jury.

■ Section 565.006[8] allowed "the record of any prior criminal convictions" to be considered in the punishment phase of a trial. Section 565.012.2[9] allowed the jury to consider capital murder or serious assaultive criminal convictions as an aggravating circumstance in capital cases. Neither statute requires appeals to be exhausted before the consideration of the conviction. The trial court has broad discretion in admitting evidence in the punishment phase. *State v. Bannister,* 680 S.W.2d 141 (Mo. banc 1984), *cert. denied,* 471 U.S. 1009, 105 S.Ct. 1879, 85 L.Ed.2d 170 (1985). "[W]e think it desirable for the jury to have as much information as possible when it makes the sentencing decision." *Gregg v. Georgia,* 428 U.S. 153, 203, 96 S.Ct. 2909, 2939, 49 L.Ed.2d 859 (1976). The trial court did not err in allowing in evidence of appellant's Illinois conviction. Respondent entered, as its Exhibit MM, a certified copy of the conviction. The fact that after appellant's counsel sought to limit the scope of the evidence on the conviction, the state chose to limit the extent of the evidence which it would have been permitted to produce concerning the conviction, only could have benefitted appellant.

## III

■ Appellant alleges that ineffective assistance of counsel caused him to waive a preliminary hearing. While we know of no case in which the waiver of a preliminary hearing has been held to have prejudiced a defendant, the correct method to raise this ineffective assistance of counsel issue is the Rule 27.26 motion. *State v. Mitchell,* 620 S.W.2d 347 (Mo. banc 1981).

---

**5.** § 565.012.2, RSMo Cum.Supp.1983.

**6.** § 565.012.2(1), RSMo Cum.Supp.1983. This conviction stemmed from appellant's murder of a thirteen year-old boy on Interstate 55 in Illinois on December 26, 1983, two weeks after the murder of which appellant was convicted in this case. *See People v. Pollard,* 149 Ill.App.3d 434, 102 Ill.Dec. 870, 500 N.E.2d 971 (1986).

**7.** Appellant's conviction has been affirmed and appellant has exhausted his direct appeals. *People v. Pollard,* 149 Ill.App.3d 434, 102 Ill.Dec. 870, 500 N.E.2d 971 (1986).

**8.** Repealed. Currently § 565.032.1(3), RSMo 1986.

**9.** Repealed October 1, 1984, currently § 565.032.2(1), RSMo 1986.

## IV

Appellant claims that the trial court erred in excusing for cause women with small children at home who stated that jury duty would create a hardship on them. Appellant claims this error violates his rights granted under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and Article 1, Section 18(a) of the Missouri Constitution.

The trial judge is vested with great discretion in ruling on the excusal of venirepersons. *State v. Gilmore*, 661 S.W.2d 519 (Mo. banc 1983), *cert. denied*, 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984). Here, the judge detailed the duties and time commitment of jury service and then asked "does that create any personal problems?" Each venireperson whom appellant claims should not have been excused said that they would have problems. In one case, the venireperson was responsible for the care of her two young children, one of whom had just undergone surgery. After these venirepersons were excused for cause, at least half of the venire were still women. The jury by which appellant was tried included five women.

The trial judge neither arbitrarily nor systematically excluded women from the panel. *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). There is no reason to believe that men responsible for the care of small children would not have been excused also. The trial court did not err in excusing the venirepersons for cause.

## V

Appellant alleges that the trial court erred in denying his Motion for Mistrial after one of the jurors viewed him in the jail holding cell.

When the venirepersons selected as jurors returned for sequestration, they passed near appellant, who was wearing regular street clothes and was handcuffed to a bench. When the judge learned of this in the middle of the trial, he immediately polled the jury to determine what, if anything, they had seen. Only one juror had seen the appellant. That juror did not see any restraints and was surprised that appellant was not in a cell. The juror stated that viewing the appellant had not influenced her concerning his guilt or innocence. The judge decided that appellant had not been prejudiced and overruled the motion for mistrial.

Declaration of a mistrial is a drastic remedy which should be used only when necessary to remove grievous prejudice. *State v. Lansford*, 594 S.W.2d 617 (Mo. banc 1980). The granting or denial of a mistrial is within the discretion of the trial court. *State v. Lee*, 654 S.W.2d 876 (Mo. banc 1983).

Under these circumstances, the juror's view of the appellant did not prejudice him and may even have benefitted him. The trial court did not err in overruling the motion for mistrial.

## VI

Appellant alleges that the trial judge erred in admitting photographs of the victim taken when the victim's body was discovered and at the autopsy.

"The trial court has broad discretion in determinng the admissibility of photographs at trial. *State v. Guinan*, 665 S.W.2d 325, 331 (Mo. banc 1984), *cert. denied*, 469 U.S. 873 [105 S.Ct. 227, 83 L.Ed.2d 156] (1984); *State v. Davis*, 653 S.W.2d 167, 175 (Mo. banc 1983)." *State v. Schlup*, 724 S.W.2d 236, 242 (Mo. banc 1987), *cert. denied*, — U.S. ——, 107 S.Ct. 3198, 96 L.Ed.2d 685 (1987).

The photographs were relevant to show the identity of the victim, the nature and extent of his wounds, and the cause of his death. *See State v. Guinan*, 665 S.W.2d 325, 331 (Mo. banc 1984).

The photographs here are neither unduly shocking nor inflammatory. Insofar as these photographs are unpleasant, it is a reflection of the nature of the crime. *State v. Clemons*, 643 S.W.2d 803 (Mo. banc 1983). The trial judge did not err in admitting the photographs.

## VII

■ Appellant alleges that the trial judge erred in admitting a photograph of the appellant taken at a pawn shop. Appellant claims the photograph lacks sufficient clarity to identify the person of whom it was taken.

As we stated above, the admission of photographs is within the discretion of the trial judge. The pawn shop photograph was relevant to show the identity of the person who sold Alford's ring. The clarity of the photograph was a matter for the jury to weigh. The trial court did not err in admitting the photograph.

## VIII

Appellant alleges that the trial court erred in giving a capital murder verdict director since the state presented no evidence that defendant was able to reflect coolly and appellant presented evidence to the contrary. Section 552.030.6, RSMo 1986, provides

> All persons are presumed to be free of mental disease or defect excluding responsibility for their conduct.... The issue of whether any person had a mental disease or defect excluding responsibility for his conduct is one for the trier of fact to decide upon the introduction of substantial evidence of lack of such responsibility. But, in the absence of such evidence, the presumption shall be conclusive. *Upon the introduction of substantial evidence of lack of such responsibility, the presumption shall not disappear and shall alone be sufficient to take that issue to the trier of fact ...*

The trial judge did not err in giving the capital murder verdict director.

## IX

Appellant alleges that the trial court erred in refusing to give a first degree murder instruction as a lesser included offense of capital murder.

■ "First degree murder in Missouri requires proof of commission of a felony; capital murder does not." *State v. Baker,* 636 S.W.2d 902, 904 (Mo. banc 1982), *cert.* denied, 459 U.S. 1183, 103 S.Ct. 834, 74 L.Ed.2d 1027 (1983). As we have repeatedly held, first degree murder is not a lesser included offense of capital murder under the statutory scheme which the legislature repealed effective October 1, 1984. *State v. Johns,* 679 S.W.2d 253 (Mo. banc 1984), *cert. denied,* 470 U.S. 1034, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985); *State v. Williams,* 652 S.W.2d 102 (Mo. banc 1983); *State v. Baker,* 636 S.W.2d 902 (Mo. banc 1982), *cert. denied,* 459 U.S. 1183, 103 S.Ct. 834, 74 L.Ed.2d 1027 (1983). The trial court did not err in refusing to instruct on first degree murder.

## X

Appellant contends that Missouri's death penalty is unconstitutional, that the court erred in allowing death qualification of jurors, that the court erred in refusing to provide a different jury for the penalty phase, and that the trial court erred in refusing individual voir dire of jurors during death qualification.

We have repeatedly found these arguments to be without merit. *State v. Guinan,* 732 S.W.2d 174 (Mo. banc June 16, 1987); *State v. O'Neal,* 718 S.W.2d 498 (Mo. banc 1986), *cert. denied,* — U.S. ——, 107 S.Ct. 1388, 94 L.Ed.2d 702 (1987); *State v. Mercer,* 618 S.W.2d 1 (Mo. banc 1981), *cert. denied,* 454 U.S. 933, 102 S.Ct. 432, 70 L.Ed.2d 240 (1981). The trial court did not err.

## XI

We now turn to our statutorily mandated review of the imposition of the death sentence. § 565.035, RSMo 1986.

There is no indication that the death sentence was imposed under the influence of passion or prejudice. After independent review, we find that the sentence was not imposed under the influence of passion, prejudice, or any other arbitrary factor.

■ The jury found as aggravating circumstances that appellant committed the murder for the purpose of receiving money or other thing of monetary value and that appellant had been previously convicted of

murder in Illinois. Neither of these aggravating circumstances is disputed. After independent review, we find that there is sufficient evidence to support both aggravating circumstances.

Finally, we must consider "[w]hether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime, the strength of the evidence, and the defendant." § 565.035.3(3), RSMo 1986. The sufficiency of the evidence is not in dispute. After independent review, we find the strength of the evidence to be overwhelming.

We have repeatedly reviewed the propriety of the death sentence for indiscriminate murders committed in the course of robbery. We have held the death penalty to be neither excessive nor disproprionate in such cases. *See State v. Johns,* 679 S.W.2d 253, (Mo. banc 1984), *cert. denied,* 470 U.S. 1034, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985); *State v. Byrd,* 676 S.W.2d 494 (Mo. banc 1984), *cert. denied,* 469 U.S. 1230, 105 S.Ct. 1233, 84 L.Ed.2d 370 (1985); *State v. Gilmore,* 661 S.W.2d 519 (Mo. banc 1983), *cert. denied,* 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984); *State v. Laws,* 661 S.W.2d 526 (Mo. banc 1983), *cert. denied,* 467 U.S. 1210, 104 S.Ct. 2401, 81 L.Ed.2d 357 (1984); *State v. Betts,* 646 S.W.2d 94 (Mo. banc 1983); *State v. Newlon,* 627 S.W.2d 606 (Mo. banc 1982), *cert. denied,* 459 U.S. 884, 103 S.Ct. 185, 74 L.Ed.2d 149 (1982).

The record clearly reflects appellant's complete disregard for the sanctity of human life.

The judgment and sentence of death are affirmed.

All concur.