STATE of Missouri, Respondent,

v.

Steven Wesley PARKUS, Appellant.

No. 69274.

Supreme Court of Missouri,
En Banc.

May 17, 1988.
Rehearing Denied June 14, 1988.

Nancy A. McKerrow, Columbia, for appellant.

William L. Webster, Atty. Gen., Elizabeth Levin Ziegler, Asst. Atty. Gen., Jefferson City, for respondent.

RENDLEN, Judge.

Found guilty of murder in the first degree, § 565.020.1, RSMo 1986 (effective Oct. 1, 1984), for the brutal strangulation of Mark Steffenhagen, appellant was sentenced to death. The cause falls within the exclusive appellate jurisdiction of this Court. Mo. Const. art. V, § 3, and we affirm.

Viewed in a light most favorable to the verdict, the jury could have found the following: On November 24, 1985, Mark Steffenhagen and appellant were inmates in the Missouri State Penitentiary (MSP), in Housing Unit 2–B, a Special Treatment (protective custody) Unit for prisoners who had been threatened with sexual abuse or had exhibited suicidal tendencies. Steffenhagen returned from supper sometime between 5:30 and 6:00 p.m. and was found strangled in his cell about 7:15. Larry Weixelbaum, an inmate walkman on fourwalk[1], who described the routine followed by inmates returning to their cells from supper, stated that upon leaving the dining hall, they returned to their walks and waited at their cells until the guard simultaneously opened all doors, at which time each entered his cell and the doors were locked. On the evening of the murder, Weixelbaum was released from his cell after the lock down to perform his duties as walkman and as he moved along the corridor he noticed the bars of Steffenhagen's cell, number 116, were covered by a blanket but he thought little of it because Steffenhagen often put up a blanket for warmth. At about 7:15, Weixelbaum heard someone calling[2] from Steffenhagen's cell and he saw a hand "waving him over". He went to the cell and appellant, who was there instead of in his own cell, shoved the blanket aside, and said, "[m]an, you got to get me out of here." Weixelbaum pulled down the blanket and told appellant to turn on the light. It was then that he could see Steffenhagen lying on his left side in the bed and he told appellant to roll him over to determine what was wrong. Appellant responded, "[m]an, he ain't breathing, I think I killed him. You are going to have to get me out of here." Weixelbaum immediately notified Sergeant Richard Hagendorf who was, at that time, on twowalk and as Hagendorf made his way to fourwalk, he released the lock on cell no. 116. As Hagendorf approached the cell appellant stepped into the hall, told Hagendorf that "[he] didn't do nothing" and tried to walk away. Hagendorf stopped appellant and ordered him to stay in front of the cell while he examined Steffenhagen. When Weixelbaum had checked Steffenhagen, he thought he felt a pulse but Hagendorf found none and called for medical assistance. About that time appellant began running toward the stairs, but Hagendorf caught him, placed him in handcuffs and moved him to a secure area where he waited for assistance. Further examination revealed Steffenhagen was dead.

An autopsy performed the next day disclosed scrapes on Steffenhagen's nose and

---

1. A "walk" is the corridor between two rows of cells and "fourwalk" refers to the walk on the fourth floor.

2. On cross-examination the sound Weixelbaum heard was described as "pist, pist".

chin and a cut on the lip suggesting he had been struck by a blunt object such as a fist. Bruises on the back of his hands, wrist and ankles indicated his arms and legs had been tied and that he had struggled against the bonds. External contusions on the neck as well as internal damage to the larynx demonstrated the cause of Steffenhagen's death was manual strangulation. From an examination of the stomach contents it was determined that death probably occurred less than an hour after Steffenhagen had eaten supper.

Ten claims of error are presented on appeal, four are alleged to have occurred in the guilt phase and six in the punishment phase.

■ Appellant first contends the trial court erred in denying his motion for judgment of acquittal because the evidence showed he lacked the capacity to coolly reflect and deliberate and that crucial failure of proof requires reversal.

When examining for the sufficiency of the evidence, our role is to "accept as true all evidence whether circumstantial or direct, tending to prove [appellant] guilty together with all reasonable inferences supportive of the verdict." Additionally, we must "disregard those portions of the record contrary to the verdict, mindful that our function is not to weigh the evidence but to determine 'whether there was sufficient evidence from which reasonable persons could have found [appellant] guilty as charged.' "

*State v. Steward,* 734 S.W.2d 821, 822 (Mo. banc 1987), (citations omitted).

Section 565.020.1, RSMo 1986 [3], provides "A person commits the crime of murder in the first degree if he knowingly causes the death of another person after deliberation upon the matter." We have held that "[a] deliberate act is a 'free act of the will,' that is done 'in furtherance of a formed design to gratify a feeling of revenge or to accomplish some other unlawful purpose and while not under the influence of a violent passion suddenly aroused by some provocation,'." *Steward,* 734 S.W.2d at 823 (citation omitted). Moreover, "the state need not produce direct evidence of a defendant's premeditation and deliberation; instead, the mental elements establishing murder may be proved by indirect evidence and inferences reasonably drawn from the circumstances surrounding the slaying." *State v. Gilmore,* 661 S.W.2d 519, 525 (Mo. banc 1983), *cert. denied,* quoting *State v. Turner,* 623 S.W.2d 4, 7 (Mo. banc 1981), *cert. denied,* 456 U.S. 931, 102 S.Ct. 1982, 72 L.Ed.2d 448 (1982).

Two psychiatrists testified concerning appellant's mental condition, Melinda Jayaratna for the state and A.E. Daniels called by the defense. Those witnesses agreed appellant was competent to stand trial and had the capacity to appreciate the wrongful nature of his conduct, but disagreed as to appellant's capacity to deliberate, a fact necessary to support a conviction of murder in the first degree; Jayaratna testified he possessed such capacity and Daniels that he did not. Jayaratna testified that in her opinion appellant was able to conform his behavior to the requirements of the law including the ability to deliberate and that evidence was sufficient to support submission of the issue to the jury. Furthermore, the nature of Steffenhagen's injuries provide sufficient evidence from which the jury could have concluded that appellant did in fact act with deliberation. The victim suffered contusions on his face resulting from blows by a blunt object, bruises and markings on his ankles and wrists indicated he had struggled against crisscrossed bindings, and damage to the neck and larynx established that he was strangled manually and rendered unconscious in about one minute after the pressure was applied to his throat. Moreover, the pathologist who performed the autopsy testified that the presence of petechia, or hemorrhaging in the eyes, in conjunction with the fact that Steffenhagen's voice box was

---

**3.** Effective October 1, 1984.

not crushed, indicates appellant continued to choke Steffenhagen for perhaps a minute after he became unconscious. These facts are comparable to those in *State v. Sturdivan*, 497 S.W.2d 139, 142 (Mo. 1973)[4], in which evidence of manual strangulation coupled with evidence that defendant continued to choke victim after he was dead was deemed evidence of deliberation, and as in *Sturdivan*, absence of evidence indicating provocation reinforces the conclusion that appellant deliberated before strangling Steffanhagen.

■ Appellant next challenges the validity of the death penalty contending it constitutes cruel and unusual punishment prohibited by the Constitution of the United States as well as that of Missouri. Such contention has been considered and put to rest in numerous cases and clearly is without merit. *State v. Driscoll*, 711 S.W.2d 512, 517 (Mo. banc 1986) *cert. denied*, 479 U.S. 922, 107 S.Ct. 329, 93 L.Ed.2d 301 (1986); *see Gregg v. Georgia*, 428 U.S. 153, 168–188, 96 S.Ct. 2909, 2922–2932, 49 L.Ed. 2d 859 (1976).

It is next asserted the trial court erred in failing *sua sponte* to declare a mistrial following a remark of the prosecutor in closing argument which appellant insists constitutes a comment on his failure to testify. Because the remark went without objection we review for plain error.

During closing argument defense counsel, in an attempt to persuade the jury the state had failed to prove the essential element of deliberation, stated:

> And, I think that's an important piece of—piece of non-evidence. It's an important piece of the puzzle that is not here. When you decide murder first or murder second, and you are thinking about deliberation, motive, reason, purpose; no evidence at all, not a single shred of evidence as to any reason as to why this occurred, and that's because we don't know what occurred in that [cell] ...
> We don't know what happened.

In rebuttal, the prosecutor replied:

> Because it's not how—what he thought he was going to do after the fact; it's

what he thought before—before he did so.

> You can't, and I can't help you crawl inside that man's head and determine what he is thinking. It's not possible. You can only determine what a man is thinking by his actions, *or if he tells you.* And his actions speak loudly, don't they?

> Strips of cloth were carried into that cell. The defendant—pardon me, the victim, Mark Steffenbagar [sic], was bound, beaten and killed.

> I don't care how pretty the words are, nonsense is nonsense. And that's what you have from the defense.

■ The fifth amendment to the United States Constitution, Article I, Section 19 of the Missouri Constitution, RSMo 546.270 (1978) and Rule 27.05 guarantee criminal defendants the right not to testify and forbid comments by others on this right, *State v. Chunn*, 657 S.W.2d 292, 294 (Mo.App. 1983), including direct and indirect references to defendants' failure to testify. Direct references typically utilize terms such as "defendant," "accused," and "testify," *State v. McNeal*, 517 S.W.2d 187, 188 (Mo. App.1974), whereas indirect references deemed impermissible are those which cause the jury to infer that the challenged statement was a comment on the defendant's failure to take the stand. *State v. Reed*, 583 S.W.2d 531, 534 (Mo.App.1979). The trial judge has wide discretion in controlling the scope of closing argument and determining what constitutes impermissible references in the context of trial, *State v. Robinson*, 641 S.W.2d 423, 426 (Mo. banc 1982); *State v. Hutchinson*, 458 S.W.2d 553, 555 (Mo.1970), and it is he who occupies the best position to observe the effect of contested statements on the jury. *State v. Raspberry*, 452 S.W.2d 169, 173 (Mo. 1970). Where, as here, defendant makes no contemporaneous objection, we will disturb the trial court's decision on whether the prosecution did in fact allude to the "defendant's failure to testify only when the references are *direct* and *certain*,"

---

4. *Overruled on other grounds, State v. Anderson,* 515 S.W.2d 534, 542 (Mo. banc 1974).

*Robinson,* 641 S.W.2d at 426 (emphasis in original); *State v. Hutchinson,* 458 S.W.2d at 555, and we find no error in the court's determination not to declare a mistrial *sua sponte.* The prosecutor's rebuttal comments were neither direct and certain references to appellant's failure to testify nor intended to draw the jury's attention to appellant's refusal to take the stand, but rather a response to the argument of defense counsel and an attempt to explain the familiar legal concept that deliberation is often proved by circumstantial evidence.

■ Moreover, the prejudicial effect, if any, of the remark was minimal because not only had appellant's counsel at voir dire extensively examined the venire concerning appellant's right to remain silent at trial, but requested and obtained, an instruction (MAI–CR3d 108.14) that defendant has the right not to testify. The observations of the court in *State v. Crawford,* 719 S.W.2d 11, 12 (Mo.App.1986), are pertinent here: "[I]n the instant case, in view of the extensive questioning of the jurors concerning their understanding of the defendant's right not to testify, it is difficult to see how the state's comments could have had any influence upon the jury's deliberations. The evidence of guilt is substantial, and no basis exists for application of the plain error rule."

■ Appellant next argues that the trial court erred in admitting four photographs of the victim which he contends were "cumulative, spectacularly gruesome and unduly prejudicial." [5] The trial court has broad discretion in determining the admissibility of photographs at trial, *State v. Pollard,* 735 S.W.2d 345, 348 (Mo. banc 1987); *State v. Guinan,* 665 S.W.2d 325, 331 (Mo. banc 1981), *cert. denied,* 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984), and typically photographs are admissible "to show the identity of the victim, the nature and extent of his wounds, and the

cause of his death." *State v. Pollard, supra* at 348. *See also State v. Schneider,* 736 S.W.2d 392, 403 (Mo. banc 1987). The photographs here did not exceed these purposes and their probative value justified their admission. "Insofar as the photographs tend to be shocking or gruesome, it is because the crime is of that sort." *State v. Guinan,* 665 S.W.2d 325, 331 (Mo. banc 1984), *cert. denied* 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984), *quoting State v. Clemons,* 643 S.W.2d 803, 804 (Mo. banc 1983).

Turning to the errors alleged to have occurred during the penalty phase of this bifurcated trial, appellant argues the trial court erred in admitting the testimony of Sam Morris, Cynthia Higbee and Luise Harshbarger detailing appellant's prior assaults because their testimony went beyond proper limits of demonstrating the aggravating circumstance of "one or more serious assaultive criminal convictions," § 565.032.2(1), RSMo 1986, and in so doing denied appellant his right to a fair trial.

Section 565.032.2(1), RSMo 1986 (adopted in 1984), provides:

2. Statutory aggravating circumstances for a murder in the first degree offense shall be limited to the following:

(1) ... the offense was committed by a person who has *one or more* serious assaultive criminal convictions; (emphasis added)

The above section replaced § 565.012.2(1), RSMo 1978, which read:

2. Statutory aggravating circumstances shall be limited to the following:

(1) ... the offense was committed by a person who has *a substantial history of* serious assaultive criminal convictions; (emphasis added)

■ The new statute tracks the language of the prior section but modified its requirement of "a substantial history" to simply "one or more serious assaultive con-

---

**5.** Appellant objected to the admission of these photographs by motion *in limine* and renewed his objections at trial. However, because appel-

lant did not object to the admission of exhibit 4 in his motion for new trial, we consider that photograph under the plain error standard.

victions." The earlier statute seemed to suggest that submission of this statutory aggravating circumstance might require evidence of more than one such conviction; however, the amendment makes clear that evidence of only one will suffice but that evidence of more than one is permitted. Nevertheless, appellant contends the court erred in allowing the testimony describing details of his prior crimes. In this regard, we decline "to impose strict boundaries on the admission of evidence during the penalty phase." *State v. Schlup,* 724 S.W.2d 236, 239 (Mo. banc 1987). It has been aptly stated that, "So long as the evidence introduced and the arguments made at the presentence hearing do not prejudice the defendant, it is preferable not to impose restrictions. We think it desirable for the jury to have as much information before it as possible when it makes the sentencing decision." *Gregg v. Georgia,* 428 U.S. 153, 203–04, 96 S.Ct. 2909, 2939, 49 L.Ed.2d 859 (1976). None of this was changed by the 1984 amendment to § 565.012.2(1). As noted above, we are confident the legislature, notwithstanding the slight modification of § 565.032.2(1), continues to contemplate the admissibility of something more than the bare record of a prior assaultive conviction and the degree of latitude permitted the state in introducing such evidence is "in direct proportion to the degree of relevance and the degree of probative value of the evidence in question." *Schlup,* 724 S.W.2d at 240. Here, the evidence consisted of descriptions of appellant's assaults on three previous victims, all of whom he had attempted to strangle in a manner similar to that which the jury found he strangled Mark Steffenhagen. The testimony showed appellant had been convicted of 1) raping and attempting to strangle Mary Fisher; 2) raping, sodomizing and attempting to strangle Luise Harshbarger; and 3) attempting to strangle Cynthia Higbee. Each incident had special relevance to the issue of propensity. In sum, this evidence showed appellant had consistently attempted to strangle his victims and with Steffenhagen finally succeeded. "The information

given to [the jury] was clearly relevant under *Gregg* and the holding of this Court in *State v. Shaw,* 636 S.W.2d 667, 675 (Mo. banc 1982), *cert. denied,* 459 U.S. 928, 103 S.Ct. 239, 74 L.Ed.2d 188 (1982), which command that the jury be given full information pertaining to the defendant, including his propensity for criminal activity, in giving consideration to imposition of the death sentence." *State v. Gilmore,* 661 S.W.2d 519, 524 (Mo. banc 1983).

Appellant next contends the court erred in submitting Instruction No. 16 during the penalty phase of trial. That instruction, patterned from MAI–CR3d 313.40, presented the jury with the statutory aggravating circumstance of "one or more serious assaultive criminal convictions" and read, in pertinent part, as follows:

In determining the punishment to be assessed against the defendant for the murder of Mark Steffenhagen, you must first unanimously determine whether one or more of the following aggravating circumstances exist:

1A. Whether the defendant was convicted of assault with intent to rape on November 2, 1977, in the Circuit Court of Cooper County, Missouri.

1B. Whether the defendant was convicted of assault with intent to rob on November 2, 1977, in the Circuit Court of the County of Cooper, State of Missouri.

1C. Whether the defendant was convicted of rape and sodomy on March 17, 1981, in the Circuit Court of the County of Cole, State of Missouri.

 It is argued the instruction presented the jury with three statutory aggravating circumstances rather than the one mandated in Section 565.032.2(1), RSMo 1986, and that the trial court failed to determine whether appellant's three previous convictions were for serious assaultive offenses as required by MAI–CR3d 313.40, Notes on Use, paragraph 4. Because these issues were not preserved for appellate review they will be considered for plain error under our Rule 30.20. *State v. Evans,* 639 S.W.2d 820 (Mo. banc 1982).

For instructional error to rise to the level of plain error, the trial court must have so misdirected or failed to instruct the jury as to cause manifest injustice or miscarriage of justice. *State v. Bolder*, 635 S.W.2d 673, 693 (Mo. banc 1982), *cert. denied*, 459 U.S. 1137, 103 S.Ct. 770, 74 L.Ed.2d 983 (1983). Plain error encompasses only prejudicial error which so "substantially affects the rights of the accused that a 'manifest injustice or miscarriage of justice inexorably results if left uncorrected.'" *State v. Valentine*, 646 S.W.2d 729, 731 (Mo. 1983). A defendant bears the burden of establishing "manifest injustice." *State v. Groves*, 646 S.W.2d 82, 83[2] (Mo. banc 1983).

■ Though appellant argues the instruction provides the jury with three aggravating circumstances rather than one, the instruction merely lists the convictions in separately numbered paragraphs as prescribed in the "Notes on Use" to the model instruction and we find no error in having so done.

■ In this connection, appellant further contends the court's failure to make a preliminary finding [6] that each prior conviction constituted a "serious assaultive criminal conviction," before submitting Instruction No. 16 constitutes reversible error. While paragraph 4 of the Notes on Use imposes on a trial court the duty to make a threshold determination that a prior conviction constitutes a "serious assaultive criminal conviction," here though no such finding was entered *on the record* it is clear from the facts before us that the court made the proper determination before submitting the issue and we cannot say that failure to specify the finding on the record substantially affected the rights of appellant nor resulted in a miscarriage of justice. *State v. Valentine*, 646 S.W.2d at 731.

The nature of appellant's convictions—assault and with intent to rape, assault with intent to rob, rape and sodomy—and the evidence supporting them manifestly demonstrate they were the type of serious assaults envisioned by the statute and clearly were determined so to be by the court. *Compare State v. Schlup*, 724 S.W.2d 236, 240 (Mo. banc), *cert. denied*, — U.S. —, 107 S.Ct. 3198, 96 L.Ed.2d 685 (1987) (second degree assault and sodomy); *State v. Bannister*, 680 S.W.2d 141, 149 (Mo. banc 1984), *cert. denied*, 471 U.S. 1009, 105 S.Ct. 1879, 85 L.Ed.2d 170 (1985) (2 counts of armed robbery, two counts of burglary, rape, and deviate sexual assault). The point is denied.

Appellant next maintains plain error during the penalty phase of the trial in the admission of State's Exhibit 32, a statement given by appellant on January 25, 1977, at the Boonville Training Center for boys when he was a juvenile, in which he confessed to his assault on Mary Fisher, an employee there. That confession was introduced as evidence supporting submission of one of the statutory aggravating circumstances, and though not properly preserved appellant contends that admission of the confession violated his due process rights and rights against self-incrimination. We review under the plain error standard and find no manifest injustice.

■ Any evidence on which a jury may rely to find a defendant has been convicted of serious assaultive criminal convictions is admissible providing the evidence is not "materially inaccurate or misleading ..." *Zant v. Stephens*, 462 U.S. 862, 887 n. 24, 103 S.Ct. 2733, 2748 n. 24, 77 L.Ed.2d 235 (1983).

■ The evidence introduced in this case showed that appellant, as a 16 year old, made a statement to the sheriff with

6. Paragraph 4 of Notes of Use of MAI–CR3d 313.40, reads in pertinent part: When paragraph numbered 1B [the pattern for Instruction No. 16] is submitted, the Court will first, outside of the hearing of the jury, determine if the defendant has one or more serious assaultive criminal convictions. If the Court finds the conviction to be a "serious assaultive criminal conviction" this paragraph may be used.

juvenile officers present in a comfortable setting and under no threats or promises. Although appellant stresses his lack of intelligence at that age, he had been present in state psychiatric and juvenile institutions since the age of 5, and was familiar with institutional settings. The statement reveals appellant was advised of all of his constitutional rights and we find no manifest injustice. Further, there is no prejudicial error in submitting an aggravating circumstance to the jury, though it may eventually be determined unsupported by sufficient evidence, if other properly supported circumstances are found. *State v. Laws,* 661 S.W.2d 526, 533 (Mo. banc 1983). Here, on abundant evidence the jury found three additional aggravating circumstances: 1) at the time of the killing appellant was in lawful custody of a place of lawful confinement, § 565.032.2(9); 2) the victim was an inmate at the time of the murder, § 565.032.2(13); 3) appellant was convicted of escape from jail on November 2, 1977 in Cooper County, Missouri, § 565.032.2(9).

 Additionally, appellant insists he was entitled to an instruction on the statutory mitigating circumstance to the effect that "The victim was a participant in the defendant's conduct or consented to the act;" § 565.032.3(3). The requested instruction was refused for lack of evidentiary support and there is no error if the trial court's determination is justified by the record. *State v. Foster,* 700 S.W.2d 440, 444 (Mo. banc 1985) *cert. denied,* 476 U.S. 1178, 106 S.Ct. 2907, 90 L.Ed.2d 993 (1986). Appellant would have us believe that the evidence supports his theory that he strangled the victim at the victim's request as a species of mercy killing. This theory has no basis in fact; there was not one jot of evidence to support its submission and the trial court properly denied the proffered instruction.

Appellant also asserts as plain error the trial court's submission of Instruction No. 16 which offered as aggravating circumstances the fact that appellant was in the lawful custody of a place of lawful confinement and that Mark Steffenhagen was an inmate of the Missouri State Penitentiary. He contends this impermissibly duplicated facts establishing the offense of the underlying crime of first degree murder, but this contention stems from an erroneous reading of *Collins v. Lockhart,* 754 F.2d 258 (8th Cir.1985) and *Sumner v. Shuman,* —— U.S. ——, 107 S.Ct. 2716, 97 L.Ed.2d 56 (1987). In those cases, challenges were raised to statutory aggravating circumstances which repeated an *element* of the underlying crime of murder. In *Collins* robbery served as an element of both the underlying crime of felony murder and the aggravating circumstances of murder for pecuniary gain.

 In contrast, the aggravating circumstances that appellant was in a place of lawful confinement and the victim an inmate of the Missouri State Penitentiary in no way duplicated an *element* of the crime of first degree murder. The identical argument was advanced in *State v. Amrine,* 741 S.W.2d 665, (Mo. banc 1987). As we stated there, "... [the] fallacy in defendant's argument is its failure to differentiate between situations in which a statutory aggravating circumstance is also an *element* of the murder from those in which it is merely demonstrated by evidence elicited during the guilt phase of the trial." *Id.* at 673. The contention is without merit.

We now turn to appellant's final point invoking our statutorily mandated review of the imposition of the death sentence. § 565.035, RSMo 1986. Appellant contends his sentence is excessive and disproportionate and was imposed under the influence of passion and prejudice; but he does not dispute that the aggravating circumstances were supported by the evidence.

 In addressing appellant's contentions we find the following: appellant received a fair trial, free from prejudicial error, as our discussion of appellant's allegations of error shows. Despite his contentions to the contrary, neither the photographs introduced by the state, evidence of his prior convictions or the prosecution's

argument, taken alone or as a whole, caused the jury to reach its result on the basis of passion or prejudice. Moreover, we find that the sentence is not "excessive or disproportionate to the penalty imposed in similar cases, considering both the crime, the strength of the evidence and the defendant." § 565.035.3(3).

We have on several prior occasions compared cases in which the death penalty was properly imposed for inmate killings and where the jury found the aggravating factor that the defendant was in lawful confinement. The dispositive facts of the case at bar are not substantially different from those in *State v. Schlup*, 724 S.W.2d 236 (Mo. banc), *cert. denied*, —— U.S. ——, 107 S.Ct. 3198, 96 L.Ed.2d 685 (1987); *State v. O'Neal*, 718 S.W.2d 498 (Mo. banc 1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1388, 94 L.Ed.2d 702 (1987); *State v. Zeitvogel*, 707 S.W.2d 365 (Mo. banc), *cert. denied*, 479 U.S. 871, 107 S.Ct. 243, 93 L.Ed. 2d 168 (1986); *State v. Guinan*, 665 S.W.2d 325 (Mo. banc 1984), *cert. denied*, 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984); *State v. Trimble*, 638 S.W.2d 726 (Mo. banc 1982), *cert. denied*, 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed.2d 1031 (1983); *State v. Shaw*, 636 S.W.2d 667 (Mo. banc), *cert. denied*, 459 U.S. 928, 103 S.Ct. 239, 74 L.Ed.2d 188 (1982); *State v. Bolder*, 635 S.W.2d 673 (Mo. banc), *cert. denied*, 459 U.S. 1137, 103 S.Ct. 770, 74 L.Ed.2d 983 (1982), in which the death penalty was properly imposed for murders arising in a prison setting and where the jury found the aggravating factor that the defendants were in lawful confinement. Specifically, this case is quite similar to *State v. Zeitvogel*, 707 S.W.2d at 366 in which the defendant killed his cellmate by strangulation with a double-strand wire. As this Court noted in *State v. Shaw*, 636 S.W.2d 667, 677 (Mo. banc 1982), *cert. denied*, 459 U.S. 928, 103 S.Ct. 239, 74 L.Ed.2d 188 (1982), and has reiterated numerous times:

> Those imprisoned for violating our laws have cast upon the state both the expense of, and the responsibility for, their safe care while in confinement. We have always held the state to the highest standard in the exercise of that responsibility. Those for whom the state must bear responsibility should be held to an equally high standard of conduct. We are unaware of either sound reason or social policy for excusing the senseless killing of either fellow prisoners or corrections officers.

Furthermore, the state's evidence in this case was very firm. It clearly showed that appellant entered the victim's cell, bound and strangled him until the vessels in his eyes burst, and we have no doubt appellant not only possessed the capacity to deliberate but exercised it as he murdered Mark Steffenhagen.

Finally, we reject appellant's attempt to analogize his case to *State v. McIlvoy*, 629 S.W.2d 333 (Mo. banc 1982). On the basis of his lack of education and limited intelligence (IQ of 73), appellant was not a "weakling and follower in executing the murder scheme perpetrated by another." *State v. Roberts*, 709 S.W.2d 857, 871 (Mo. banc 1986), *cert. denied*, 479 U.S. 946, 107 S.Ct. 427, 93 L.Ed.2d 378 (1986) quoting *State v. McIlvoy*, 629 S.W.2d 333, 341 (Mo. banc 1982). To the contrary, the evidence demonstrates that he alone planned and executed the murder. As to his claims based on diminished intelligence, we point out that appellant, who is 28 years of age, has the same IQ of 73 as the defendant in *State v. Shaw*, 636 S.W.2d at 672, and in the same general range as the defendant in *State v. Gilmore*, 681 S.W.2d 934, 941 (Mo. banc 1984).

The judgment and sentence are affirmed.

BILLINGS, C.J., and DONNELLY, ROBERTSON and HIGGINS, JJ., concur.

BLACKMAR, J., concurs in part and dissents in part in separate opinion filed.

WELLIVER, J., concurs in part and dissents in part in separate concurring in part and dissenting in part opinion of BLACKMAR, J.

BLACKMAR, Judge, concurring in part and dissenting in part.

I agree that the conviction should be affirmed. Section 565.035 provides in pertinent part as follows:

\* \* \* \* \* \*

2. The supreme court of Missouri shall consider the punishment as well as any errors enumerated by way of appeal.

3. With regard to the sentence, the supreme court shall determine:

\* \* \* \* \* \*

(3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime, the strength of the evidence *and the defendant.* (Emphasis supplied).

\* \* \* \* \* \*

The record shows that the defendant has lived his life from a very young age in some form of custody in a Missouri institution. He has been unable to adapt to any environment in which he finds himself. The easiest course of action might be to execute him as a means of extermination or euthanasia, but there should be a limit to the process of burying our mistakes. The state must bear some responsibility for the situation which has developed. I would exercise our statutory authority by mitigating the death sentence to life imprisonment.